Irving T. SCHWARTZ

v.

UNITED STATES of America.

UNITED STATES of America

v.

Marvin MANDEL, et al.

Civ. No. Y–81–350.
Crim. No. Y–75–0822.

United States District Court,
D. Maryland.

Jan. 25, 1990.

Ransom J. Davis, and H. Russell Smouse, Baltimore, Md., for Irving T. Schwartz.

Breckinridge L. Willcox, U.S. Atty. D. Md., and Jefferson M. Gray, Asst. U.S. Atty., Baltimore, Md., for U.S.

## MEMORANDUM

JOSEPH H. YOUNG, Senior District Judge.

Plaintiff, Irving T. Schwartz, pursuant to Rule 60(b)(5) and (6) of the Federal Rules of Civil Procedure, seeks to vacate the Order of Court dated March 26, 1984 and seeks return of property that has been forfeited to the United States of America pursuant to a final judgment in the criminal prosecution entitled *United States v. Marvin Mandel,* Criminal No. Y–75–0822 (October 7, 1977) *affirmed* 591 F.2d 1347 (4th Cir.) *cert. denied* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

At issue is plaintiff's claim to ownership of 240,765 shares of stock in the Southern Maryland Agricultural Association ("SMAA"). On August 23, 1977, a jury returned a verdict in *United States v. Marvin Mandel, supra,* convicting Irvin Kovens and five other defendants on charges of mail fraud, including violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* The Plaintiff has requested oral argument; however the issues have been fully briefed, and the Court has determined that oral argument is not necessary.

By special verdict, the jury determined, *inter alia,* that Irvin Kovens held a "RICO interest" in the particular shares of SMAA stock which are the subject of this controversy, and that the stock was therefore

subject to forfeiture under RICO, 18 U.S.C. § 1963(c).

Plaintiff Schwartz was not named in the Indictment and was not a defendant in the *Mandel* criminal proceeding. Accordingly, the relative interests in the SMAA shares, as between Plaintiff and Mr. Kovens, were not determined by the jury in that proceeding. Nor was Plaintiff afforded an opportunity to present testimony or other evidence at that trial in order to establish his claim to ownership of the stock.

On October 7, 1977, the Court entered an Order directing the criminal defendants to forfeit their full ownership interest in the SMAA to the United States. The Order allowed a period of twenty (20) days for all interested parties to show cause "why the forfeitures ordered herein shall not be finally effectuated." Plaintiff then filed his timely claim to ownership of the 240,765 shares.

In a subsequent Order, dated December 12, 1977, the Court directed that the stock be placed in escrow with the Clerk of Court pending further order of the Court. Plaintiff's claim was deferred by a memorandum attached to the December 12 Order in which the Court stated that "the issue raised by petitioner Schwartz would be better handled by the Judge who is assigned to deal with the forfeiture in a civil proceeding." Plaintiff's appeal of the December 12, 1977 Order was dismissed by the Fourth Circuit on March 10, 1978. The *Mandel* defendants also appealed the criminal convictions, and during the pendency of that appeal, all further proceedings regarding ownership of the SMAA stock were stayed.

On July 20, 1979, the Court of Appeals affirmed the convictions in *United States v. Marvin Mandel*, 591 F.2d 1347 (4th Cir.) *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). On January 21, 1981, 505 F.Supp. 189, this Court ordered the SMAA stock forfeited but stayed the effect of the forfeiture to allow Plaintiff an opportunity to petition the Attorney General of the United States for remission or mitigation of the forfeiture pursuant to 18 U.S.C. § 1963(c) and 28 C.F.R. §§ 9.1–9.7. Plaintiff then filed a petition with the Attorney General,[1] appealed the January 21, 1981 Order and filed this civil action seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202, 1346 and 1355. The Court of Appeals determined that Plaintiff, a non-party to the criminal action, was entitled to assert his claim to the forfeited property in a separate civil action. The matter was remanded and consolidated with Plaintiff's declaratory judgment action.

A trial scheduled for December 19, 1983, was postponed, and following settlement negotiations between Plaintiff the United States, the parties agreed to a compromise wherein 40% of the stock (96,306 shares) was allocated to the Plaintiff and the remaining 60% of the stock (144,459 shares) was to be retained as forfeited to the United States. This agreement was embodied in an Order of this Court dated March 26, 1984 and, the stock no longer available, Plaintiff was paid an amount based upon a stipulated value per share.

Plaintiff contends that his decision to compromise his claim to the stock was "predicated upon" the decisions of this Court reflected in its pre-trial Memorandum filed on March 20, 1984, 582 F.Supp. 224 (D.C.Md.), in which certain preliminary issues relating to the conduct of the civil trial were resolved in the government's favor. Plaintiff's brief, at 2. In that Memorandum, the Court determined that: (1) the Plaintiff did not have a right to a jury trial on the issue of his ownership of the stock; (2) the verdict in the *Mandel* case was admissible as evidence in the civil trial under Rule 803(22) of the Federal Rules of Evidence; and (3) Plaintiff had the burden of proving that he, rather than Kovens, was the rightful owner of the SMAA stock. Order, 582 F.Supp. 224. Plaintiff asserts that, "[g]iven these rulings by the Judge,

---

**1.** The Attorney General denied Plaintiff's Petition for Remission Or Mitigation of Forfeiture without a hearing on May 6, 1982.

the outcome of the civil trial was a foregone conclusion." Plaintiff's brief, at 11.

However, the government contends that Plaintiff's decision to settle could not have been "predicated upon" the March 20, 1984 Memorandum because, as indicated by the correspondence between the parties and the Court, Plaintiff had tentatively agreed to the 60%—40% division (subject only to resolution of a collateral tax issue) as early as September 9, 1983.

Subsequent to the March 26, 1984 Order, no further proceedings were held with regard to either the *Mandel* criminal case or Plaintiff's property claim until 1987. At that time, in response to the Supreme Court's narrowed interpretation of the mail fraud provisions of 18 U.S.C. § 1341 in the case of *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), the six *Mandel* defendants petitioned the Court for a writ of error *coram nobis* to vacate the prior judgment of conviction.[2]

On November 12, 1987, the writ was granted and the convictions of the *Mandel* defendants were set aside. Following the reasoning of the Southern District of New York in *Ingber v. Enzor*, 664 F.Supp. 814, 823 (S.D.N.Y.1987), the trial judge concluded that retroactive application of *McNally* was required. *Mandel*, 672 F.Supp., at 875, n. 7. Accordingly, the 1977 convictions and adjudications of guilt of all six defendants were set aside as being void *ab initio*. *Id.* at 879.

Consequently, the RICO forfeitures were also declared void and the United States was ordered to grant restitution for any fines paid under the earlier convictions. *Id.* at 876, n. 2.[3] The Fourth Circuit Court of Appeals affirmed the issuance of the writ. *United States v. Mandel*, 862 F.2d 1067 (4th Cir.) (Widener, J.) *cert. denied* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1989).

Plaintiff now seeks to have the settlement and final disposition of his civil property claim vacated pursuant to Rule 60(b). Subsections (b)(5) and (6) of that Rule provide as follows:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b)(5) and (6). The "any other reason" language contained in Rule 60(b)(6) has been generally interpreted to indicate an intent by the drafters to make clause (6) and the first five clauses mutually exclusive. Thus, relief is not available under clause (6) if it would have been available under the earlier clauses. 11 C. Wright & A. Miller, *Federal Practice and Procedure: Civil*, § 2864 (1973). Plaintiff's reference to both clauses (5) and (6) of the Rule must, therefore, be treated as asserting alternative grounds for relief.

■ Rule 60(b) further provides that "[t]he motion shall be made within a reasonable time."[4] In determining whether the motion has been brought within a reasonable time the Court must inquire into the effect, if any, of the delay on the party

---

2. Athough each of the defendants had already served his respective term of imprisonment under the 1977 convictions, the *coram nobis* writ was sought to obtain restitution for fines already paid, including the forfeitures under the RICO convictions, and as a remedy for any other "results of the conviction [that] may persist" *United States v. Mandel*, 672 F.Supp. 864, 867 (D.Md.) *affirmed* 862 F.2d 1067 (4th Cir. 1988) (quoting *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954)).

3. As of this date, neither Kovens, nor his estate, has asserted a claim to the 240,765 shares forfeited pursuant to his "RICO interest" found by the jury.

4. In addition to being governed by the reasonable time limitation, motions to vacate based upon the reasons contained in clauses (1), (2), and (3) shall be made "not more than one year after the judgment, order, or proceeding was entered or taken." Fed.R.Civ.P. 60(b).

opposing the motion. *See e.g., Washington v. Penwell,* 700 F.2d 570 (9th Cir.1983); *see also* Annotation, 15 ALR Fed. 193, 203. Thus, when the delay causes prejudice to the opposing party's ability to gather and present his evidence and witnesses after reliance on what it had thought was a final judgment or order, the reasonable time limitation has been exceeded. *Mach v. Pennsylvania R. Co.,* 198 F.Supp. 473 (D.C.Pa 1961).

■ Although approximately six (6) years have passed since this Court approved the stipulation of settlement between Plaintiff and the government, there is little or no prejudice to the government as a result of the delay. The shares of stock were sold under the terms of the 1984 settlement. The government has not contended that there is any difficulty in measuring the value of any award of restitution, resulting from the passage of time, and there is no indication that the government has been prejudiced in its ability to present evidence in opposition to the motion.

Finally, the "changed circumstances" upon which Plaintiff relies result from the 1987 Order to vacate in the *Mandel* case and the 1988 affirmance by the Court of Appeals. The Supreme Court denied certiorari in June 1989, and plaintiff filed this motion on October 10, 1989. The Court finds that this motion was filed within the "reasonable time" limitation under the circumstances of this case.

■ Although timely filed, the government asserts that analysis under Rule 60(b) is inappropriate because the March 26, 1984 Order from which relief is sought, is not a final judgment on the merits of the action. Rather, the Order merely adopted and gave legal effect to the terms of settlement agreed to by the parties. The government thus contends that Rule 60(b) does not provide grounds for relief under the circumstances of this case. United States of America brief in Opposition, at 16.

Rule 60(b) provides for relief from "a final judgment, order, or proceeding". This language has been liberally construed to afford post-judgment relief with regard to default judgments, *see e.g. Stancil v. United States,* 200 F.Supp. 36 (E.D.Va 1961) and interlocutory judgments. *See e.g. Bon Air Hotel, Inc. v. Time, Inc.,* 426 F.2d 858 (5th Cir.1970).

In addition, the Fourth Circuit has held that a consent decree, intended as a final disposition of a cause of action, is entitled to the same *res judicata* effect as a final judgment on the merits. *Nash County Bd. of Educ. v. Biltmore Co.,* 640 F.2d 484 (4th Cir.1981). Indeed, the "equitable" provisions of clauses (5) and (6) of the Rule have frequently been held to afford relief from the prospective application of equitable consent decrees based upon stipulation of the parties. *See generally* C. Wright & A. Miller, *Federal Practice and Procedure: Civil* §§ 2863 and 2864. Similarly, this Court finds that, although not based upon a full litigation of the merits, the March 26, 1984 Order constitutes a "final" disposition of the case for purposes of application of Rule 60(b).

Plaintiff does not specify which of the particular grounds under Rule 60(b)(5) should apply to this case. However, as the government correctly observes, the first of these grounds, i.e., that "the judgment has been satisfied, released, or discharged," clearly does not apply.

■ The second phrase under clause (5) provides for relief from a final order when "a prior judgment upon which it is based has been reversed or otherwise vacated." Appellate Courts have adopted a narrow construction of this provision limiting its application to cases in which the present judgment is "based on" the prior judgment in the sense of *res judicata* or collateral estoppel. *Berryhill v. United States,* 199 F.2d 217, 219 (6th Cir.1952); It is thus the settled rule that "a change in the judicial view of the applicable law, after a final judgment, is not a basis for vacating a judgment entered before announcement of the change." *Berryhill supra; Brown v. Clark Equipment Co.,* 96 F.R.D. 166, 173 (1st Cir.1982); *DeFilippis v. United States,* 567 F.2d 341, 343 (7th Cir.1977); *see gener-*

*ally,* Wright & Miller, *supra* § 2863, at 204; 124 U.Pa.L.Rev. 843, 850.

This Court has already determined that the forfeiture pursuant to the 1977 *Mandel* convictions cannot have a collateral estoppel or *res judicata* effect as to future claimants who were not parties to the original action. *Memorandum and Order,* 582 F.Supp. 224, 227. The only effect that the *Mandel* decision had upon the settlement and the March 26, 1984 Order is in the parties' assessment of the risks involved in carrying the matter to a full trial on the merits. Therefore, the Order could not have been "based on" the prior judgment for purposes of Rule 60(b)(5).

■ The third phrase under clause (5) provides relief when "it is no longer equitable that the judgment should have prospective application." In considering the question of when, for purposes of Rule 60(b)(5), a judgment can be said to have "prospective application", it was held that:

Virtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect; even a money judgment has continuing consequences, most obviously until it is satisfied, and thereafter as well inasmuch as everyone is constrained by his or her net worth. That a court's action has continuing consequences, however, does not necessarily mean that it has "prospective application" for the purposes of Rule 60(b)(5).

*Twelve John Does v. District of Columbia,* 841 F.2d 1133, 1138 (D.C.Cir.1988). Adopting the analysis contained in two early Supreme Court decisions,[5] *Does* concluded that "the standard to be applied in determining whether an order or judgment has prospective application within the meaning of Rule 60(b)(5) is whether it is 'executory' or involves 'the supervision of changing conduct or conditions,' ...." *Twelve John Does,* 841 F.2d, at 1139.

It is clear that the March 26, 1984 Order of this Court, adopting the terms of settlement stipulated between the parties, was intended to constitute a final disposition of

the Plaintiff's property claim. The terms of that Order were not "executory" or involving a continuing supervision of changing conditions. The Court therefore concludes that none of the grounds for relief provided for under clause (5) of Rule 60(b) are applicable to the circumstances of this case.

Plaintiff contends, in the alternative, that he is entitled to post-judgment relief as a matter of equity under clause (6) of the Rule. As stated *supra,* clause (6) permits the Court to vacate a final order for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). The 1948 amendments added clause (6) to give courts the power to vacate judgments whenever appropriate to accomodate justice. *Klapprot v. United States,* 335 U.S. 601, 614–615, 69 S.Ct. 384, 390–91, 93 L.Ed. 266 (1949). Motions under Rule 60(b)(6) are addressed to the discretion of the District Court and should be granted in cases of "extreme hardship" where relief would not be available under any of the other provisions. *Bell Tel. Laboratories, Inc. v. Hughes Aircraft Co.,* 73 F.R.D. 16, 21 (D.C.Del.1976).

In *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950) the Supreme Court held that if a party makes a free and conscious choice regarding the conduct of the litigation, he cannot be granted relief under Rule 60(b)(6) from the consequences of that decision. *Id.* 71 S.Ct. at 211. The petitioner in *Ackermann* was a native of Germany who had been naturalized in the United States. Complaints had been filed against Ackermann and his business partner to cancel their naturalization on grounds of fraud. After a consolidated proceeding in which both individuals were represented by counsel, the District court vacated the orders admitting both individuals to citizenship. One petitioner, Keilbar, appealed that order and the Court of Appeals reversed. However, Ackermann did not appeal, but later filed a

5. *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), and *State of* *Pennsylvania v. Wheeling & Belmont Bridge Co.,* 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1856).

motion in the District Court to vacate under Rule 60(b).

On appeal, the Supreme Court held:

Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of the Keilbar case.

340 U.S., at 198, 71 S.Ct., at 211.

The rule stated in *Ackermann* has almost uniformly been followed. *See e.g. United States v. O'Neil,* 709 F.2d 361, 373 (5th Cir.1983); *Marshall v. Board of Ed., Bergenfield, N.J.,* 575 F.2d 417, 424 (3d Cir.1978); *Bell Tel. Laboratories, Inc. v. Hughes Aircraft Co., supra,* at 21; *Lubben v. Selective Service System Local Bd. No. 2,* 453 F.2d 645, 651 (1st Cir.1972); *Berryhill v. United States supra,* at 219.

In *DeLong's, Inc. v. Stupp Bros. Bridge & Iron Co.,* 40 F.R.D. 127 (E.D.Mo.1965), the plaintiff chose to dismiss two defendants from his action in order to gain an earlier trial date. After an adverse judgment, he moved to vacate the earlier dismissals under Rule 60(b)(6). The Court denied the motion reasoning that the plaintiff had made a calculated choice and it was through such choice that he put himself in the position from which he sought relief. *Id.* at 130.

■ Plaintiff, here, made a conscious choice to forego the risk of litigation and to settle for the certainty of receiving 40% of his original claim. Such an exercise of free will is clearly the type presented in the *Ackermann* line of cases, and it is thus distinguishable from those situations involving "extreme hardship" contemplated by the drafters of the Rule.

**6.** In his Reply Brief, Plaintiff, for the first time, raises further grounds for relief under Rule 60(b)(4). Such additional grounds are beyond the scope of the Motion and, the government

Plaintiff's subjective view that an adverse decision on his claim was a "foregone conclusion" does not change the fact of a bargain between two parties, represented by counsel, involving a free decision based upon calculated risks. As the correspondence amply indicates, Plaintiff had tentatively agreed to the terms of settlement approximately five (5) months before this Court's ruling on the admissibility of the *Mandel* verdict. Accordingly, no extreme hardship has been visited upon the Plaintiff and the motion under Rule 60(b)(6) must be denied.[6]

having no opportunity to respond, such additional grounds will not be considered by this Court.