Irving T. SCHWARTZ, Plaintiff–
Appellant,

v.

UNITED STATES of America,
Defendant–Appellee
(Three Cases).

UNITED STATES of America, Plaintiff,

v.

Marvin MANDEL, et al., Defendant
(Two Cases).

Nos. 90–6043, 90–6061 and 90–6062.

United States Court of Appeals,
Fourth Circuit.

Argued July 30, 1991.

Decided Sept. 28, 1992.

Ransom J. Davis, argued (H. Russell Smouse and Nancy S. Allen, on brief), Whiteford, Taylor & Preston, Baltimore, Md., for appellant.

Jefferson McClure Gray, Asst. U.S. Atty., Baltimore, Md., argued (Richard D. Bennett, U.S. Atty., on brief), for appellee.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

OPINION

WIDENER, Circuit Judge:

I

These three consolidated appeals are the latest chapter in fifteen years of litigation spawned by the indictment and conviction of Marvin Mandel and his co-defendants (the Mandel defendants) under the federal mail fraud statute and the Racketeer Influenced and Corrupt Organizations Act (RICO). At the time of the convictions, the United States asserted a RICO forfeiture claim to a block of stock in the Southern Maryland Agricultural Association (SMAA), contending that Irvin Kovens, one of the Mandel defendants, was the true owner. Appellant, Irving Schwartz, who was not indicted in the Mandel case, argued then and argues now, that he, not Kovens, owned the stock. Schwartz and the United States settled their dispute over the stock, and on March 26, 1984 the district court entered a judgment giving effect to the terms of the settlement.

In 1988 this court affirmed the grant of a writ of error *coram nobis* in favor of all Mandel defendants vacating their convictions. Schwartz now seeks to reassert his claim to the stock.* In this appeal, Schwartz seeks to reverse the district court's refusal to grant relief from the judgment of March 26, 1984. For reasons stated below, we affirm.

* The stock has been sold and Schwartz actually seeks recovery of the proceeds of its sale. For ease of explanation, however, this opinion will refer to the controversy as involving rights to ownership of the stock itself.

## II

By indictment returned in November, 1975, the United States charged that certain of the defendants named in the indictment, including Irvin Kovens, had operated the Marlboro Race Track through a pattern of racketeering activity in violation of 18 U.S.C. § 1962. Pursuant to the provisions of 18 U.S.C. § 1962(c) and 1963(a), the United States sought forfeiture of the interests of the named defendants in the Marlboro Race Track, including interests held in the form of SMAA stock. The Government contended that Schwartz held the stock as nominee for the true owner, Irvin Kovens, so that Kovens could avoid the effect of a restrictive covenant prohibiting him from owning an interest in a competing racetrack. Both Kovens and Schwartz claimed that Schwartz was the true owner.

A jury returned guilty verdicts against all defendants and found, by special verdict, that Kovens owned the stock through Schwartz as nominee. On October 7, 1977, a forfeiture order was entered ordering Kovens to forfeit his interest in SMAA. The order further directed all interested parties to show cause why the forfeiture should not become final.

On October 26, 1977, Schwartz filed a response to the show cause portion of the October 7 forfeiture order and a claim to ownership of the stock. On December 12, 1977, the district court ruled that Schwartz's claim to the stock should be addressed in a civil forfeiture proceeding by the assigned judge. The court ordered the stock placed in escrow with the clerk of the court pending further court order. Schwartz appealed to this court but we dismissed because the December 12 order was not final and appealable under 28 U.S.C. § 1291.

During 1979, this court issued three decisions, the net effect of which was to affirm the convictions of the Mandel defendants, including Irvin Kovens. *United States v. Mandel*, 591 F.2d 1347 (4th Cir.1979), 602 F.2d 653 (4th Cir.1979) (en banc), 609 F.2d 1076 (4th Cir.1979) (en banc). The Supreme Court denied certiorari. *Mandel v. United States*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

On January 21, 1981, the judge assigned to handle the civil forfeitures ordered that the stock be forfeited but that the forfeiture be stayed while Schwartz pursued an administrative remedy in the form of a request for remission or mitigation of the forfeiture before the Attorney General. *United States v. Mandel*, 505 F.Supp. 189, 192 (D.Md.1981). Schwartz's Petition for Remission or Mitigation of Forfeiture was denied by the Attorney General.

Schwartz filed a suit for declaratory judgment on February 20, 1981, seeking to assert his ownership of the stock. An appeal from the order of January 21, 1981 was remanded by this court for consolidation with the declaratory judgment action.

Finally, in early 1984, the parties reached a settlement. The settlement agreement, dated February 2, 1984, allocated 60% of the disputed stock to the United States and 40% to Schwartz. Each party "relinquish[ed] any and all further claim of ownership and/or of a proprietary interest of any kind or character in the portion of the stock allocated to the other party."

On March 20, obviously unaware, and not advised, of the settlement agreement, the district court issued a pre-trial order. The order denied Schwartz's motion for a jury trial and for exclusion of the verdicts in the criminal trial, and placed the burden of proving ownership on Schwartz.

On March 26, 1984, the district court entered the order which is the judgment at issue in this appeal. "[H]aving been apprised by counsel for the respective parties that a settlement ha[d] been reached … respecting the appropriate division of" the stock at issue in this appeal and "having been provided with a copy of [the settlement agreement] dated February 2, 1984" and "recognizing that certain actions [were] necessary to implement the settlement" and "intending by its actions to give effect to the settlement", the district court ordered the clerk of court, with whom the stock was in escrow, to make arrangements so that the liquidation value of SMAA would be distributed in accordance

with the settlement, 60% to the United States and 40% to Schwartz. The order further provided that the district court would retain jurisdiction over the matter until all actions necessary to effectuate the settlement had been taken.

In 1987 the Supreme Court decided *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), rejecting the intangible rights doctrine. The Court held in *McNally* that the federal mail fraud statute did not make it a crime to defraud citizens of their intangible right to an honest and impartial state government. The Mandel defendants, including Kovens, had been convicted of mail fraud on the same intangible rights theory rejected in *McNally*, and mail fraud was used as a RICO predicate offense. Accordingly, the district court issued a writ of error *coram nobis* to all of the Mandel defendants vacating all of their convictions. *U.S. v. Mandel*, 672 F.Supp. 864 (D.Md.1987). The court found that *McNally* did not change the scope of the mail fraud statute, but merely announced that from its inception the statute had not protected the intangible right to honest government. Therefore, the Mandel defendants' conduct had never been, even at the time that they were convicted, a violation of the mail fraud statute. *Id.* at 873, 875. As Schwartz asserts, the convictions were void *ab initio*. This court affirmed. *United States v. Mandel*, 862 F.2d 1067 (4th Cir.1988), *cert. denied*, 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989).

After three of the Mandel defendants moved to modify the order forfeiting their SMAA stock and to require the Government to repay the value of their forfeited stock, the United States agreed to repay them the value of their forfeited shares. Irvin Kovens, however, was not among the three. To our knowledge, neither Kovens nor his estate has made any claim to the SMAA stock at issue in this appeal.

## III

Schwartz instituted three separate proceedings seeking to recover the stock in light of the vacation of Kovens conviction.

Schwartz argues that issuance of the writ of error *coram nobis* rendered Kovens' RICO conviction and the RICO forfeitures based on it void *ab initio*; that the Government does not have, and never had, any right to keep the stock; that the Government holds the stock in constructive trust for the rightful owner, Schwartz; and that Schwartz should have relief from the settlement agreement and the judgment entered pursuant to it because when they made the settlement both the Government and Schwartz mistakenly assumed that Kovens' RICO convictions were valid. All three proceedings requested relief from the district court's judgment of March 26, 1984 entered pursuant to the settlement agreement and the turnover to Schwartz of the 60% share taken by the Government under the settlement. The first motion argued that relief should be granted under Rule 60(b)(5) and (6); the second sought to add a claim for relief based on Rule 60(b)(4); and the third was a complaint for a declaratory judgment.

The district court denied relief in each instance and entered judgment for the Government in the declaratory judgment action. Schwartz appeals each of the three decisions which we have consolidated on appeal.

## IV

### A.

■ We first discuss the claim that the Government holds the stock pursuant to a void RICO forfeiture. So far as Schwartz is concerned, the Government does not hold the stock merely pursuant to the judgment of forfeiture. The initial forfeiture was expressly conditioned on the failure of any interested parties to show cause why the forfeiture should not become final. The subsequent forfeiture order was stayed to allow Schwartz's challenge to it. Until the parties settled their dispute in early 1984, the stock was held in escrow by the clerk of court pending the outcome of Schwartz's challenge to the forfeiture. It was in the face of Schwartz's declaratory judgment action in which Schwartz had sued the

United States that Schwartz and the Government finally settled their dispute over the stock. In order to effectuate the terms of the settlement, the district court issued an order directing the clerk of court to make the necessary endorsements and delivery of the stock. The Government holds its 60% share of the stock pursuant to this order and the underlying settlement agreement, not only the RICO forfeiture order. Therefore, it is not sufficient for Schwartz to assert that the *coram nobis* writ rendered the RICO forfeiture order void *ab initio*. He also must seek relief from the settlement agreement and the March 26, 1984 order entered pursuant to it. Our attention, therefore, will be given to Schwartz's request for relief from the 1984 settlement and order.

### B. 60(b)(4)

■ Rule 60(b)(4) provides for relief from a judgment that is "void." "A judgment is not void merely because it is erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." 11 Wright and Miller, *Federal Practice and Procedure: Civil* § 2862 at 198–200 (1973).

■ Schwartz does not argue that the district court was without jurisdiction to enter the order at issue. Nor can we see a violation of due process, although he seems to assert that there was one. By his settlement with the Government, Schwartz made a conscious choice, based on an informed weighing of the risks and benefits of further litigation, to forego the very procedures afforded to protect his right to due process. He had the right to try, in the declaratory judgment action, the question of ownership of his stock and gave up that right by the settlement. We will not entertain the suggestion that the order entered to enforce the consequences of this choice violates due process. See, e.g., *Pitts v. Board of Educ. of USD 305, Salina Kansas*, 869 F.2d 555, 557 (10th Cir.1989).

### C. 60(b)(5)

■ Schwartz also seeks relief from the 1984 judgment under the provisions of Rule 60(b)(5) and (6). The relevant parts of Rule 60(b) provide:

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Schwartz does not argue for relief under the first clause of Rule 60(b)(5), which provides for relief when "the judgment has been satisfied, released, or discharged."

The second clause of Rule 60(b)(5) provides relief from a judgment when "a prior judgment upon which it is based has been reversed or otherwise vacated." The application of this clause has been "limited to cases in which the present judgment is based on the prior judgment in the sense of *res judicata* or collateral estoppel." 11 Wright and Miller, *Federal Practice and Procedure: Civil* § 2863 at 204 (1973).

The order disposing of the declaratory judgment case by agreement under the terms of the settlement was in no sense dependent for its validity upon the judgment of conviction of Kovens. The settlement was of a case concerning the very issue which is presented here, the ownership of the stock, and so far as Schwartz and the United States are concerned, that issue was determined by the settlement. Granting that the question of who owned the stock arose because of Kovens' conviction, the settlement of the question as between Schwartz and the United States did not depend upon it, for if Kovens' conviction had been known to have been invalid at the time of the settlement, undoubtedly that factor would have been taken into consideration by the parties at that time, which it was not, else we would have had that argued also.

■ Finally, with respect to Rule 60(b)(5), Schwartz claims that it is no longer equitable that the order of settlement should have prospective application. The simple answer to this contention is that the order has no prospective application. No contention is made that the few duties required by the order were not immediately carried out, or that there is anything left to do under that order. See *Gibbs v. Maxwell House*, 738 F.2d 1153, 1155–56 (11th Cir. 1984) in which the court, in denying prospective application under Rule 60(b)(5) of an order of dismissal stated: "That plaintiff remains bound by the dismissal is not a 'prospective effect' within the meaning of Rule 60(b)(5) any more than if plaintiff were continuing to feel the effects of a money judgment against him." We find *Gibbs* persuasive. The construction of Rule 60(b)(5) that Schwartz seeks, which apparently is to the effect that a judgment has prospective effect so long as the parties are bound by it, would read the word "prospective" out of the rule, which we decline to do. Such reading would open up to re-examination any judgment memorializing a settlement if in hindsight the settlement might seem inequitable. We do not think that the courts can function on such a basis. The vast majority of cases are settled, as everyone knows, and Rule 60(b)(5) simply cannot be read so as to expose each settlement to equitable re-examination.

■ Along this line, the argument that Schwartz had to settle because the pre-trial order of March 20, 1984 had decided questions with respect to trial by jury, burden of proof and admissibility of evidence against him, simply is contrary to the facts in the record. The settlement agreement is dated February 2, 1984, more than six weeks prior to the district court's pre-trial order of March 20, 1984. So Schwartz's argument has the order reversed.

### D.60(b)(6)

We are unaware of any case addressing the precise issue raised here: whether the district court abused its discretion in refusing to grant 60(b)(6) relief, on the grounds of mutual mistake, from a judgment entered pursuant to a settlement agreement. But we find *Ackermann, infra*, persuasive, as did the district court.

In that case the Court held that strategic decisions made during the course of litigation provide no basis for relief under 60(b)(6), even though with hindsight they appear wrong. *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). After the district court had cancelled their naturalization certificates, the Ackermanns failed to appeal. Mrs. Ackermann's brother, Keilbar, in the same case, did appeal his cancellation, however, and succeeded in having the complaint against him dismissed. The Ackermanns argued that they were entitled to relief under Rule 60(b)(6) from the judgment cancelling their naturalization. The Court rejected their argument in the following language:

> Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of the Keilbar case. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.

*Id.* at 198, 71 S.Ct. at 211–12.

We find no meaningful distinction between a motion asking for relief from a decision not to appeal, as in *Ackermann*, and one that asks for relief from a decision to settle, as in this case. The decision to settle a case is made in the same manner as any other decision with respect to the course of litigation, including a decision not to appeal. A litigant weighs the chance of success against the probable cost of achieving that success through further litigation, all based on whatever limited information is available at the time. Schwartz necessarily undertook such a cost-benefit weighing in 1984 when he decided to settle his challenge to the forfeiture. His was as calculated, free, and deliberate a choice as

that of Mr. and Mrs. Ackermann, and as their's was not, he should not be relieved from it.

We think the district court did not abuse its discretion in refusing relief under Rule 60(b). *McLawhorn v. John W. Daniel & Co., Inc.*, 924 F.2d 535, 538 (4th Cir.1991).

V

Finally, we address Schwartz's action for declaratory judgment, the appeal from the dismissal of which also is consolidated in this appeal. As in the 60(b) motions, Schwartz seeks relief from the March 26, 1984 judgment entered pursuant to the settlement agreement and a declaration that the United States holds the stock in question in trust for Schwartz. The district court entered judgment for the United States because it held *res judicata* the order entered on the settlement in the earlier declaratory judgment action filed by Schwartz. We agree and affirm on the opinion of the district court. *Schwartz v. United States*, 745 F.Supp. 1132 (D.Md. 1990).

VI

We should add that we have added little to the various thorough and complete opinions of the district court under review here which it filed with respect to the ownership of the stock, and with all of which we agree. In many instances the district court's opinions address the questions at hand in more detail than have we. See *Schwartz v. United States*, 129 F.R.D. 117 (D.Md.1990); *Schwartz v. United States*, 733 F.Supp. 235 (D.Md.1990); and *Schwartz v. United States*, 745 F.Supp. 1132 (D.Md.1990).

VII

We emphasize that we express no opinion on, and do not decide, any rights that Kovens' estate and the United States may have against each other concerning the ownership of the stock, or any rights that Schwartz and Kovens' estate may have against each other with respect to the same question. Our only decision is that, for the moment, as between Schwartz and the United States, the question has been determined.

VIII

We have not mentioned explicitly each of the plethora of arguments and sub-arguments made in Schwartz's brief, however we have considered all of them and are of opinion they are without merit.

The orders and judgments of the district court appealed from are in each case

AFFIRMED.

