# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 9, 2018

Lyle W. Cayce
Clerk

No. 17-60283

NATIONAL CITY GOLF FINANCE, A Division of National City Commercial Capital Company, L.L.C.,

       Plaintiff - Appellee

v.

MARVIN L. SCOTT,

       Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before DAVIS, JONES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

This appeal raises questions of judicial procedure and power arising from a lawsuit about golf carts. After a year of federal litigation, the parties settled and filed an unconditional stipulation of dismissal. The defendant later regretted that choice. So he moved to rescind the settlement and vacate the dismissal under state contract law, positing a mistake of fact and unjust enrichment. All assumed the district court had jurisdiction to resolve that motion on state-law terms. It did not. Rather, because the parties' unconditional dismissal deprived

No. 17-60283

the district court of subject-matter jurisdiction, the proper vehicle for the motion was Federal Rule of Civil Procedure Rule 60(b). We construe the motion under that rule and affirm on those alternative grounds.[1]

## I.

Marvin Scott used to own Golf Cars of Mississippi, L.L.C. (Golf Cars), a business that bought and leased golf carts. The company financed its purchases by taking out loans, many of which Scott guaranteed personally. Among its lenders was National City Golf Finance (National). In 2008, Golf Cars defaulted on one of National's loans. So National sued Scott, his company, and his business partner, Curt Busching. (National later amended its complaint to add more defendants and to seek greater damages.) One of the complaint's ten claims was for breach of contract. This count concentrated on a personal guaranty that Scott had allegedly signed but failed to honor.

A year later, Scott and National settled. Their bargain: National would release its filed claims against Scott—plus several unfiled ones—in exchange for $500,000. More important, the parties agreed to abide by the settlement terms even if they later discovered new claims or material facts. We quote the exact terms because they matter:

> Each Party acknowledges and understands that hereafter it may discover or appreciate claims, facts, issues, or concerns after the Effective Date [of the settlement] which are not otherwise specifically excluded from the releases herein but which may be in addition to or different from those that it now knows or believes to exist with respect to the subject matter of this Agreement that, if known or suspected at the time of execution of this Agreement, might have materially affected the settlement embodied herein. Each Party nevertheless agrees that it has taken that possibility

---

[1] While this appeal was pending, the appellee filed an unopposed motion to amend the pleadings or to remand this case to the district court. We grant the former and deny the latter.

2

into account and that it is the intention of each Party to fully, finally[,] and forever settle and release the matters, disputes[,] and differences, now known or unknown, suspected or unsuspected, arising out of or in any way relating to the matters released pursuant to . . . this Agreement, and that the general releases and waivers described . . . above apply to any such additional or different claims, facts, issues, or concerns.

Scott does not contest that the parties drafted the settlement agreement "with equal bargaining power" and with "the benefit of counsel of their own choosing." Indeed, Scott's current counsel negotiated and signed that contract.

National and Scott executed the settlement agreement on August 27, 2009. The next day, they filed an unconditional stipulation of dismissal without prejudice[2] under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Within a few weeks, however, Scott signed—but did not immediately file—an affidavit averring that "[t]he signature on the Personal Guaranty [attached to National's complaint] is not [his] signature."

Scott's business partner, Busching, filed for bankruptcy a few months later. In March 2010 National filed an unsecured proof of claim in the bankruptcy case, but the bankruptcy court discharged that claim under 11 U.S.C. § 727. Meanwhile, National resolved its claims against all other defendants through settlements or default judgments. By June 2010 this case was over.

Or so it seemed. Despite having already settled his stake in this case, Scott hired a handwriting expert to opine whether someone had forged his signature. In mid-August 2010 the expert reported that the signature on the guaranty was, in his view, a fake. (Scott thinks Busching was the culprit.) So on

---

[2] As it happens, the parties' settlement said the dismissal would be *with* prejudice, but the agreement appended a proposed stipulation that was silent on this question. The parties then filed their stipulation without indicating the dismissal's prejudicial effect. The dismissal was therefore without prejudice. Fed. R. Civ. P. 41(a)(1)(B) ("Unless the notice or stipulation [of dismissal] states otherwise, the dismissal is without prejudice.").

No. 17-60283

August 27, 2010—exactly a year after Scott and National executed their settlement agreement—Scott filed in district court a "Motion to Rescind Settlement Agreement and Vacate Stipulation of Dismissal," asking "to re-join this civil action as a Defendant." The motion relied on three state-law grounds: (1) the parties mutually mistook the allegedly forged signature as Scott's; (2) alternatively, Scott made that mistake unilaterally; and (3) failing to rescind the settlement would unjustly enrich National. This was the first time Scott alerted the district court to his affidavit disputing his signature.

Six years later, the district court took evidence and denied the motion on the merits, holding that the settlement "must be enforced" because Scott expressly assumed the risk of any factual mistakes and thus failed to "satisf[y] the standard for setting aside the settlement" under state law. The parties now reprise the same state-law arguments they leveled below. Neither mentions the six grounds for relieving a party "from a final judgment, order, or proceeding" authorized by Rule 60(b).

## II.

The parties' unconditional stipulation of dismissal raises a threshold question of jurisdiction, one we must raise on our own initiative and resolve de novo. *See Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transp.*, 858 F.3d 980, 982 (5th Cir. 2017). Scott and National invoked Rule 41(a)(1)(A)(ii), which permits litigants to "dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared."[3] A stipulation of dismissal under that rule ordinarily—and automatically—strips the

---

[3] In a multi-defendant suit, the plaintiff may single out a party for dismissal; in those cases only the dismissed defendant need sign the stipulation. *See Plains Growers ex rel. Florists' Mut. Ins. Co. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 253 (5th Cir. 1973) (holding that Rule 41(a) permits a plaintiff to dismiss just one defendant, "even though the action against another defendant would remain pending"); 9 Wright & Miller, *Federal Practice &*

4

district court of subject-matter jurisdiction. *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 461 (5th Cir. 2010) ("[A] district court's jurisdiction over a case that is settled and voluntarily dismissed by stipulation cannot extend past the filing date absent an express contingency or extension of jurisdiction . . . ."). This typically means that "any action by the district court after the filing of such a stipulation can have no force or effect." *Id.* at 463; *accord* 9 Wright & Miller, *Federal Practice & Procedure* § 2367 (3d ed. Apr. 2018 update) ("After the dismissal, the action no longer is pending in the district court and no further proceedings in the action are proper.").[4]

So we must ask: What authority gives a district court jurisdiction to entertain a motion to rescind a settlement agreement, if that motion was filed months after the parties filed an unconditional stipulation of dismissal? We see two possible answers: ancillary jurisdiction and Rule 60(b). As explained below, only Rule 60(b) is potentially applicable here.

### A.

The doctrine of ancillary jurisdiction empowers district courts (1) to resolve "factually interdependent" claims or (2) to address issues implicating the ability "to manage [the court's] proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994). Neither type gave the district court power to resolve Scott's motion.

Scott cannot rely on the first category of ancillary jurisdiction to rescind his settlement agreement on state-law grounds. Generally speaking, "factually

---

*Procedure* § 2362 (3d ed. Apr. 2018 update) (spotting a circuit split on this question but calling ours "the sounder view").

[4] Our precedent has noted an exception: a district court may have jurisdiction to decide a motion to intervene after a Rule 41(a)(1) dismissal with prejudice. *See Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 (5th Cir. 2016); *see also Odle v. Flores*, 683 F. App'x 288, 289 (5th Cir. 2017). But this exception does not apply; there is no motion to intervene in this case.

interdependent" claims are those that support supplemental jurisdiction under 28 U.S.C. § 1367. *See Peacock v. Thomas*, 516 U.S. 349, 354 n.5 (1996). This kind of ancillary jurisdiction disappears, however, after the original federal dispute is dismissed. *See, e.g., id.* at 355 ("[O]nce judgment was entered in the original . . . suit, the [district court's] ability to resolve simultaneously intertwined issues vanished."); *Nat'l Presto Indus. v. Dazey Corp.*, 107 F.3d 1576, 1580–81 (Fed. Cir. 1997) ("[O]nce the original federal dispute is dismissed, claims that at one time might have been brought as 'ancillary' to that dispute may no longer be brought.").

Nor did Scott's motion implicate the second type of ancillary jurisdiction—the district court's enforcement authority. The court's enforcement authority extends to "collateral issues," things like fees, costs, contempt, and sanctions. *Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010); *see also Kokkonen*, 511 U.S. at 379–80. By default, this power does not include enforcing (or vacating) a settlement that prompted a Rule 41(a)(1)(A)(ii) stipulation of dismissal. *See SmallBizPros*, 618 F.3d at 463. But there is an exception to this rule: the district court may either "incorporate or embody the terms of a settlement agreement in a dismissal order"—such that a breach of the settlement is a violation of a court order—or otherwise "retain jurisdiction over a settlement agreement by clearly indicating such intent in a dismissal order." *Id.* at 462–63; *see also Kokkonen*, 511 U.S. at 381–82. To trigger this exception, the parties' Rule 41 stipulation must "expressly manifest[]" their intent that dismissal be "contingent upon a future act (such as the district court['s] issuing an order retaining jurisdiction)." *SmallBizPros*, 618 F.3d at 463. But where, as here, the parties unconditionally dismiss their case, "the [s]tipulation's effectiveness [i]s immediate" and the case is over. *Id.*

There is no basis for ancillary jurisdiction here.

No. 17-60283

## B.

Because ancillary jurisdiction is unavailable, we consider Rule 60(b). This rule allows a district court to "relieve a party . . . from a final judgment, order, or proceeding," Fed. R. Civ. P. 60(b), including a Rule 41(a)(1)(A) dismissal, *see Yesh Music v. Lakewood Church*, 727 F.3d 356, 362–63 (5th Cir. 2013) ("[A] Rule 41(a)(1)(A) voluntary dismissal without prejudice qualifies as a 'final proceeding' . . . subject to vacatur under Rule 60(b).").

Our sister circuits concur that Rule 60(b) is the appropriate vehicle for a motion like Scott's. In *George P. Reintjes Co. v. Riley Stoker Corp.*, for instance, the First Circuit held that the "only route to relief from [a] settlement and underlying judgment is through application of Federal Rule of Civil Procedure Rule 60(b)." 71 F.3d 44, 46 (1st Cir. 1995). In *Cummings v. Greater Cleveland Regional Transit Authority*, the Sixth Circuit similarly held that this sort of relief "finds its roots in Rule 60(b) vacatur, not any general jurisdiction to oversee, much less uproot, the terms of a settlement." 865 F.3d 844, 848 (6th Cir. 2017); *cf., e.g.*, *Nelson v. Napolitano*, 657 F.3d 586, 589 (7th Cir. 2011) ("[T]here may be instances where a district court may grant relief under Rule 60(b) to a plaintiff who has voluntarily dismissed the action."). Another leading treatise agrees: "An unconditional dismissal by stipulation," it says, "terminates the district court's jurisdiction, except for the limited purpose of reopening and setting aside the judgment within the scope of Rule 60(b)." 8–41 *Moore's Federal Practice – Civil* § 41.34[g] (2017) (footnote omitted). We find this authority persuasive. Rule 60(b) is the proper vehicle for Scott's motion.

## III.

We resolve Scott's motion in the first instance because his arguments track Rule 60(b)(1) and the record confirms that he is not entitled to relief. *See Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 118–19 (5th Cir. 2008).

No. 17-60283

Rule 60(b) names six grounds to "relieve a party . . . from a final judgment, order, or proceeding":

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);[5]

(3) fraud . . ., misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A party relying on subsections (1), (2), or (3) must move "no more than a year after the entry of the [final] judgment or order or date of the [final] proceeding." *Id.* 60(c)(1). The last three prongs are less stringent and require movants to file "within a reasonable time." *Id.*

Scott clears Rule 60(b)'s timing hurdle but not its substantive standard.

Rule 60(b)(1) most naturally covers Scott's motion because he urges a mistake of fact and excusable neglect. But those arguments founder, for in the settlement itself Scott assumed the risk of such blunders. He "acknowledge[d] and underst[ood]" that he might later "discover or appreciate claims, facts, issues, or concerns" that would have "materially affected the settlement" had he grasped them earlier. He agreed that he had "taken that possibility into account" yet still wished to resolve National's claims "fully, finally[,] and forever." Rule 60(b) "was not intended to relieve [a party] of the consequences of deci-

---

[5] Federal Rule of Civil Procedure 59(b) imposes a 28-day deadline after entry of judgment.

sions deliberately made, although subsequent events reveal that such decisions were unwise." *Fed.'s Inc. v. Edmonton Inv. Co.*, 555 F.2d 577, 583 (6th Cir. 1977); *see also In re Pettle*, 410 F.3d 189, 193 (5th Cir. 2005) ("Where a party makes a considered choice . . . he cannot be relieved of such a choice [under Rule 60(b)] because hindsight seems to indicate to him that, as it turns out his decision was probably wrong." (alteration in original) (quoting *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 6 (1st Cir. 2001))); 11 Wright & Miller, *supra*, § 2858 (observing that "voluntary dismissals . . . based on erroneous facts" may "prevent a party from seeking relief on the ground of mistake or excusable neglect" (collecting cases)). From Rule 60(b)(1)'s perspective, Scott's present remorse over his past risk does not suffice.

Rule 60(b)(2)—which addresses newly discovered evidence—does not offer Scott respite either. "To obtain Rule 60(b)(2) relief, a movant must demonstrate: '(1) that it exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment.'" *Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 744 (5th Cir. 2009) (quoting *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 639 (5th Cir. 2005)). The movant must "strictly" satisfy these requirements. *Longden v. Sunderman*, 979 F.2d 1095, 1102 (5th Cir. 1992). Scott cannot. The evidence he invokes is not "new"; he always had access to the document bearing his alleged signature, and his memory has always been his own. And even if, as Scott assumes, his duty of diligence began only eleven months after National sued him, he still had ample time to study his signature before entering a settlement agreement that expressly assumed the risk that he might later "discover or appreciate" material facts. *See, e.g.*, *Gov't Fin. Servs. One LP v. Peyton Place, Inc.*, 62 F.3d 767, 771–72 (5th Cir. 1995) (no Rule 60(b)(2) relief where the movant failed to show lack of prior access to supposedly "new" documents). Rather than show diligence,

9

Scott acknowledges a "degree of negligence." *Cf. Thermacor*, 567 F.3d at 744 (no Rule 60(b)(2) relief where the movant failed to explain why new evidence could not have been timely obtained). He does not satisfy Rule 60(b)(2).

For its part, Rule 60(b)(3) is inapposite. It targets judgments that were "unfairly obtained," not those that are "factually incorrect." *Hesling*, 396 F.3d at 641. The movant must muster clear and convincing evidence (1) "that the adverse party engaged in fraud or other misconduct" and (2) "that this misconduct prevented the moving party from fully and fairly presenting his case." *Id.* Scott, however, does not accuse National of wrongdoing.

Nor is Rule 60(b)(4) relevant. This provision relieves parties from a judgment if the trial court "acted in a manner inconsistent with due process of law," *Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir. 1998) (quoting *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996)), or issued a judgment that, "from its inception, was a complete nullity and without legal effect," *id.* (quoting *United States v. Zima*, 766 F.2d 1153, 1159 (7th Cir. 1985)). The parties' Rule 41 dismissal checks neither of those boxes.

So, too, for Rule 60(b)(5). On this score, Scott must show that "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Scott strives to restart this litigation, so he cannot conceivably invoke Rule 60(b)(5)'s rarely-used first clause. *See* 11 Wright & Miller, *supra*, § 2863. Nor can he satisfy the second clause, as this ground "is limited to cases in which the present judgment is based on [a] prior judgment in the sense of claim or issue preclusion." *Id.*

And Rule 60(b)(5)'s last clause does not apply because it addresses judgments with prospective effects. "A judgment operates prospectively if it requires a court to supervise changing conduct or conditions that are provisional or tentative." *In re Moody*, 849 F.2d 902, 906 (5th Cir. 1988). An ordinary

No. 17-60283

money judgment is not prospective because it "offers a present remedy for a past wrong." *See McDonald v. Oliver*, 642 F.2d 169, 171 (5th Cir. 1981) (denying Rule 60(b)(5) relief from a money judgment). Since Scott's settlement is akin to a money judgment—he agreed to pay money damages for past acts—he cannot rely on Rule 60(b)(5)'s final clause. *See id.*; *see also Schwartz v. United States*, 976 F.2d 213, 218 (4th Cir. 1992) ("That plaintiff remains bound by the dismissal is not a 'prospective effect' within the meaning or Rule 60(b)(5) any more than if plaintiff were continuing to feel the effects of a money judgment against him." (quoting *Gibbs v. Maxwell House*, 738 F.2d 1153, 1155–56 (11th Cir. 1984))). As the Fourth Circuit aptly put it, "Rule 60(b)(5) simply cannot be read so as to expose each settlement to equitable re-examination." *Schwartz*, 976 F.2d at 218.

Finally, Rule 60(b)(6)'s catch-all provision requires the same result. Subsection (b)(6) is "mutually exclusive" with the rule's other clauses and extends relief only in "extraordinary circumstances." *Hess v. Cockrell*, 281 F.3d 212, 215–16 (5th Cir. 2002); *see also Gonzalez v. Crosby*, 545 U.S. 524, 528–29 (2005) ("Rule 60(b)(6) . . . permits reopening when the movant shows 'any . . . reason justifying relief from the operation of the judgment' other than the more specific circumstances set out in Rules 60(b)(1)–(5)." (second alteration in original) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 873 (1988))). That Scott neglected to study a key piece of evidence—a document he was best positioned to dispute—is not an extraordinary circumstance warranting relief. *See, e.g.*, *Gonzalez*, 545 U.S. at 537 (concluding that the movant's "lack of diligence" makes the circumstances "all the less extraordinary"). This is especially true where that document pertained to just a sliver of several settled claims and where the settlement expressly assumed the risk of material mistakes of fact.

11

No. 17-60283

## IV.

By unconditionally dismissing this action under Rule 41(a)(1)(A)(ii), the parties divested the district court of subject-matter jurisdiction over their dispute. To reopen this case, Scott must lean on Rule 60(b). But that rule's six doors remain closed.

AFFIRMED.