**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: SYNCOR ERISA LITIGATION,

CAROL PILKINGTON; DONNA BROWN;
KAREN THOMPSON; CYNTHIA DUNN;
ANTOINETTE HART; SHIRLEY
NOBREGA; DEBORAH PINNER;
PAMELA THOMSON; CHERIE
BRANNAN, on behalf of themselves
and all others similarly situated,
     *Plaintiffs-Appellants,*

    v.

CARDINAL HEALTH, INC.; ROBERT D.
WALTER; PAUL S. WILLIAM,
      *Defendants,*

    and

SYNCOR INTERNATIONAL
CORPORATION; ROBERT G. FUNARI;
MONTY FU,
    *Defendants-Appellees.*

No. 06-55265

D.C. No.
CV-03-02446-RGK

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
November 9, 2007—Pasadena, California

Filed February 19, 2008

Before: Kim McLane Wardlaw, Carlos T. Bea, and
N. Randy Smith, Circuit Judges.

1431

Opinion by Judge N.R. Smith

**COUNSEL**

T. David Copley, Law Offices of Keller Rohrback, L.L.P., Seattle, Washington, and Edward W. Ciolko, Law Offices of Schiffrin & Barroway, LLP, Radnor, Pennsylvania, for the plaintiffs-appellants.

Daniel S. Floyd, Law Offices of Gibson, Dunn & Crutcher LLP, Los Angeles, California, for the defendants-appellees.

**OPINION**

N.R. SMITH, Circuit Judge:

We hold that, when parties (1) enter into a binding class action settlement agreement, which requires court approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and (2) provide the required notice of the settlement to the district court prior to the district court's entry of the final judgments, the district court should hold a hearing and review the settlement agreement to determine if it is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). Failure to do so— even when the district court has already drafted a summary judgment order— is an abuse of discretion. We also hold that genuine issues of material fact exist regarding whether the Defendants breached their fiduciary duty under ERISA as set forth in 29 U.S.C. § 1104(a), which precludes an award of summary judgment. Accordingly, we reverse and remand.

## I. Factual Background

Syncor International Corp. ("Syncor"), a health care services company, merged with Cardinal Health, Inc. ("Cardinal") on January 1, 2003. Prior to the merger, Syncor was the administrator and fiduciary of the Syncor Employee's Saving and Stock Ownership Plan ("the Plan"), a retirement plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Committee members appointed by Syncor's board of directors administered the Plan. Syncor's board of directors also had final decision-making authority regarding all aspects of the Plan's administration. Defendants-Appellees Monty Fu ("Fu") and Robert G. Funari ("Funari") were both members of Syncor's board of directors.

The Plan consisted of two components. First, the Plan's 401(k) component allowed participants to contribute between one and fourteen percent of their compensation each pay

period to any of the nine available investment funds chosen by Syncor.[1] The second component of the Plan allowed participants to invest as much as an additional two percent of their compensation in an employee stock ownership plan ("ESOP"), which was designed to invest primarily in Syncor's common stock.

On June 14, 2002, Syncor and Cardinal announced that Cardinal would acquire Syncor in a stock-for-stock merger. The merger agreement provided that Syncor shareholders would receive 0.52 shares of Cardinal common stock for each outstanding share of Syncor common stock. Pursuant to the merger agreement, Cardinal conducted a due diligence review of Syncor's operations. In October 2002, after conducting the review, Cardinal notified Syncor that certain payments made by Syncor's Taiwanese subsidiary, Syncor Taiwan, Inc., may have violated the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd-1 *et seq*.

Cardinal discovered that, beginning in approximately 1985, Defendant Fu and Moses Fu (Defendant Fu's brother, who was in charge of Syncor's Taiwan subsidiary) knowingly made cash bribes to doctors at Taiwanese government-operated hospitals in order to increase sales and grow Syncor's business. Syncor also systematically encouraged the managers of its other foreign operations to use bribes in the countries in which they did business. Despite these illegal practices, the Plan's committee members, including Fu and Funari, allowed the Plan to hold and acquire Syncor stock when they knew or had reason to know of Syncor's foreign bribery scheme.

Thereafter, Cardinal announced that it had discovered illegal payments made by Syncor's subsidiaries in Taiwan and China. After this disclosure, Syncor's stock price dropped, losing almost half its value. Cardinal then reduced the merger

---

[1]The 401(k) component of the Plan is not at issue in this matter.

exchange rate to 0.47 shares of Cardinal stock for each Syncor share. This change resulted in a loss of between 24 and 65.5 million dollars to members of the Plan. As a result of this loss, a class action complaint was filed on behalf of all persons who were participants in the Plan ("the Class"). On March 28, 2005, the district court certified the lawsuit as a class action.

Syncor then entered into a non-prosecution agreement with the Department of Justice. Syncor Taiwan, Inc. entered a guilty plea to one count of violating the FCPA and paid a fine of $2,000,000. Syncor also entered a consent decree with the Securities Exchange Commission in which Syncor agreed to the entry of a cease-and-desist order and agreed to pay a fine of $500,000. Fu surrendered $2,500,000 worth of his own Syncor stock to reimburse Syncor for the fines.

## II.   Procedural History & Settlement

On February 24, 2004, the Class filed its consolidated complaint, which alleged that Syncor and the Plan's committee members breached their fiduciary duties to the Plan and its participants in violation of ERISA §§ 404(a)(1)(A)-(D) & 405. In its January 10, 2005 Order Re: Civil Jury Trial, the district court ordered the parties to comply with the local rules setting out mandatory settlement procedures. On October 19, 2005, the district court entered an order granting the parties additional time to participate in a settlement procedure. In November 2005, Defendants Syncor and Funari filed a joint Motion for Summary Judgment and Defendant Fu filed a separate Motion for Summary Judgment. The parties engaged in formal mediation on December 12, 2005, with settlement negotiations continuing after that date. During the time period following mediation, the parties continued to file documents regarding the summary judgment motions. On December 16, 2005, the district court took the motions "under submission."

On January 10, 2006, without notice that the district court had reached a decision regarding the summary judgment

motions, the parties signed a "Revised Term Sheet," with a proposed settlement. The term sheet stated, "Court approval is a condition of this settlement." Pursuant to Central District of California Local Rule 16-15.7, which instructs litigants on how to report a settlement, the parties left a message for the district court's clerk regarding the parties' term sheet. Counsel for the Class also delivered a letter to the district court stating, "The parties have signed a term sheet and have begun the process of formally documenting the settlement." Neither party provided the term sheet to the district court. On the same day, the district court signed an order granting Syncor's, Funari's, and Fu's motions for summary judgment, holding Plaintiffs failed to demonstrate genuine issues of material fact existed as to whether Defendants breached their duty of prudence.

The following day, January 11, 2006, the parties submitted a signed stipulation and a proposed order asking the district court, among other things, to "not issue a ruling on the Motions for Summary Judgment." Again neither party provided the term sheet to the district court. Even though the parties provided the required notice of settlement to the district court, the district court nevertheless entered its order granting the motions for summary judgment on January 11, 2006. The district court entered final judgments against the Class on January 12, 2006. Thereafter, the district court denied the parties' proposed order regarding settlement as moot.

On January 25, 2006, the Class filed a motion under Federal Rules of Civil Procedure 60(b) and 59(e) requesting that the district court set aside the final judgments. The Class also filed a motion for preliminary approval of the settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. On March 2, 2006, the district court denied the Class's Rule 60(b) and Rule 59(e) motions and the Class's motion for preliminary approval of the settlement holding that merely because "the parties reached a tentative settlement on the same day the Court issued its summary judgment rulings does

not, without more, mean that a manifest injustice will result if the Court allows its summary judgment rulings to stand."

The Class appeals from the district court's rulings and raises two issues: (1) whether the district court abused its discretion by not considering the class action settlement and (2) whether the district court erred by concluding plaintiffs failed to demonstrate genuine issues of fact existed as to whether the fiduciaries breached their fiduciary duty to the Plan and participants. We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand.

## III.   Standard of Review

Motions for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure are addressed to the sound discretion of the district court and will not be reversed absent an abuse of discretion. *See United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005). "A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000).

We also review the denial of a motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure for abuse of discretion. *Smith v. Pac. Props. & Dev. Corp.,* 358 F.3d 1097, 1100 (9th Cir. 2004). "Rule 59(e) amendments are appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Dixon v. Wallowa County,* 336 F.3d 1013, 1022 (9th Cir. 2003) (internal quotation marks omitted).

We review de novo the district court's grant of summary judgment and, viewing the evidence in the light most favorable to the non-moving party, determine whether there are any

genuine issues of material fact for trial. *Gammoh v. City of La Habra*, 395 F.3d 1114, 1122 (9th Cir. 2005).

## IV.   Discussion

### A.   *The Settlement Agreement*

**[1]** Federal Rule of Civil Procedure 23(e) requires the district court to "approve any settlement of a certified class" before such a settlement becomes final. Fed. R. Civ. P. 23(e). In evaluating a class action settlement under Rule 23(e), the district court determines whether the settlement is fundamentally fair, reasonable, and adequate. *Id*. The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights. *See Davis v. City and County of San Francisco*, 890 F.2d 1438, 1444 n.5 (9th Cir. 1989). Here, the district court never considered whether to approve the settlement because the court found that its summary judgment order mooted the tentative settlement agreement.

**[2]** The parties agree that they had reached an enforceable settlement agreement subject to court approval. Our court has previously held that the requirement that the district court approve a class action settlement does not affect the binding nature of the parties' agreement. *See Collins v. Thompson*, 679 F.2d 168, 172 (9th Cir. 1982) ("Judicial approval of a [class action settlement] is clearly a condition subsequent, and should not affect the legality of the formation of the proposed [settlement] as between the negotiating parties.") At the time of the settlement, Defendants knew they had dispositive motions pending and chose the certainty of settlement rather than the gamble of a ruling on their motions. Thus, Defendants chose to forego the chance that the district court would grant summary judgment in their favor. Because the parties bound themselves to a settlement agreement subject only to court approval (which they had agreed to seek) and gave the required notice of the agreement, the district court should not

have (1) filed its order granting the motions for summary judgment and (2) entered final judgments against the Class.

The facts of this case are somewhat analogous to *Sheng v. Starkey Labs, Inc.*, 117 F.3d 1081 (8th Cir. 1997). Although the settlement in *Sheng* did not involve a class action, the Eighth Circuit's reasoning that the district court abused its discretion is equally applicable here. In *Sheng*, the district court signed (but did not enter) an order granting summary judgment the Friday before the mediation was to commence. *Id.* at 1082. The following Monday, the parties settled the matter and the district court vacated its summary judgment order and dismissed the case. *Id.* Thereafter, the defendant filed a Rule 60(b) motion seeking to vacate the order dismissing the case. After remand for an evidentiary hearing, a new district court judge reinstated the summary judgment order. *Id.* at 1083. The Eighth Circuit held the defendant was bound by the settlement, notwithstanding the court's ruling on the merits. "Rule 60(b) does not allow district courts to indulge a party's discontent over the effects of [the party's] bargain." *Id.* at 1083 (internal quotation omitted). Accordingly, the court held that because the parties had entered into a binding settlement, the district court abused its discretion in granting the defendant's Rule 60(b) motion. *Id.*

Additionally, there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned. *See Class Plaintiffs*, 955 F.2d at 1276. In *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982), we specifically stated that, "it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . ." *Id.* at 625. This policy is also evident in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court, Central District of California, which encourage facilitating the settlement of cases. *See* Fed. R. Civ. P. 16(a)(5) (one of the five purposes of a pretrial

conference is to facilitate settlement); L.R. 16-2.9 (requiring parties to exhaust all possibilities of settlement); L.R. 16-15 to 15.9 (setting forth policies and procedures for settlement including encouraging disposition of civil litigation by settlement by any reasonable means). The record demonstrates that the Class complied with the local rules by reporting the settlement immediately to the trial judge's courtroom deputy clerk and timely memorializing the settlement. *See* L.R. 16-15.7. The district court, nevertheless, refused to vacate the summary judgment order and subsequent final judgments even though the parties had entered a binding settlement agreement subject only to the district court's approval pursuant to Rule 23(e).

**[3]** Defendants argue that the district court has the discretion to enter final judgment rather than review the proposed settlement in order to manage its calendar. Defendants argue that, because the settlement was not yet final, the district court did not abuse its discretion by entering the judgments on the merits. These arguments, however, are not compelling under these circumstances. Because the parties provided appropriate notice to the district court of the settlement agreement, the court should never have filed its order or entered the final judgments. The parties informed the district court that they had entered a binding settlement agreement the day before the district court entered its summary judgment order and two days before the district court entered the final judgments. The district court thus should have reviewed the settlement document as required under Fed. R. Civ. P. 23(e). The district court's management of its docket must not undercut a valid settlement agreement between the parties that is appropriately provided to the district court for review.

**[4]** That the district court had already drafted a summary judgment order is not justification for refusing to approve an otherwise enforceable settlement agreement between the parties. The district court is not a party to the settlement. The court's role in the class action settlement process is to protect

the right of those not involved in negotiating the settlement, generally the unnamed class members. *Officers for Justice*, 688 F.2d at 624 (stating the primary concern of section 23(e) is the protection of those class members, whose rights may not have been given due regard by the negotiating parties).

**[5]** Therefore, we hold that the district court abused its discretion by entering the final judgments and by refusing to vacate the final judgments under Rules 59(e) and 60(b)(6). The district court erred when it did not apply Rule 23(e) and review the settlement agreement prior to the entry of the judgments. Therefore, we reverse the district court's denial of the Class's motion to vacate the entry of final judgments and remand with instructions to the district court to review the settlement pursuant to Rule 23(e). Accordingly, we also vacate the district court's entries of judgments in favor of Syncor, Fu, and Funari.

### B. Summary Judgment

Defendants moved for summary judgment on the basis that they did not breach their fiduciary duties because (1) 29 U.S.C. § 1104 exempted them from the duty to diversify holdings in company stock, and (2) Syncor stock was not an imprudent investment. In reviewing the motions for summary judgment, the district court applied the so-called "*Moench* presumption," under which fiduciaries of ESOPs are presumed to have acted consistently with ERISA in their decisions to invest assets in employer stock. *See Moench v. Robertson,* 62 F.3d 553, 571 (3d Cir. 1995). A plaintiff may rebut this presumption by establishing that the fiduciary abused its discretion and a prudent investor under the circumstances would not have followed the plan's mandate to invest in employer securities. *Id.* The district court granted Defendants' motions, finding the Class failed to rebut the *Moench* presumption because the Class failed to present any evidence that Syncor knew that its financial condition was seriously

deteriorating and that there was a genuine risk of insider self-dealing.

**[6]** Viewing the evidence in the light most favorable to the Class, we find there are genuine issues of material fact for trial rendering summary adjudication inappropriate. As an initial matter, this Circuit has not yet adopted the *Moench* presumption, *see Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1098 n.3. (9th Cir. 2004), and we decline to do so now. In any event, the district court's determination that the Class did not rebut the *Moench* presumption based solely upon Syncor's financial viability (as shown by evidence that Syncor stock outperformed both the NASDAQ and S&P 500) is not an appropriate application of the prudent man standard set forth in either *Moench* or 29 U.S.C. § 1104.

**[7]** The plain language of 29 U.S.C. § 1104(a)(2) does not require fiduciaries of an eligible individual account plan to diversify their investment outside of company stock in order to meet the prudent man standard of care. *See Wright*, 360 F.3d at 1096-97. However, 29 U.S.C. § 1104(a)(2) does not exempt fiduciaries from the first prong of the prudent man standard, which requires a fiduciary to act with care, skill, prudence, and diligence in any investment the fiduciary chooses. *See Wright*, 360 F.3d at 1097, 29 U.S.C. § 1104(a)(1)(B). A prudent man standard based only upon a company's alleged financial viability does not take into account the myriad of circumstances that could violate the standard. A violation may occur where a company's stock did not trend downward over time, but was artificially inflated during that time by an illegal scheme about which the fiduciaries knew or should have known, and then suddenly declined when the scheme was exposed. While financial viability is a factor to be considered, it is not determinative of whether the fiduciaries failed to act with care, skill, prudence, or diligence.

**[8]** We find that genuine issues of material fact exist regarding whether Defendants breached the "prudent man"

standard set forth in 29 U.S.C. § 1104(a). The "prudent man" standard of care requires a fiduciary to discharge his duties with respect to a plan solely in the interest of participants "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims." 29 U.S.C. § 1104(a)(1)(B). Here, there is a genuine issue whether the fiduciaries breached the prudent man standard by knowing of, and/or participating in, the illegal scheme while continuing to hold and purchase artificially inflated Syncor stock for the ERISA Plan.

## V.  Conclusion

We conclude that the district court abused its discretion by entering the final judgments and by refusing to vacate the final judgments under Rules 59(e) and 60(b)(6). We further hold that the district court erred in granting summary judgment. We therefore reverse the district court's summary judgment in favor of Defendants. We also reverse the order of the district court denying the Class's Rule 60(b)(6) and Rule 59(e) motions and remand with instructions to the district court to review the settlement agreement pursuant to Rule 23(e) and to take further actions consistent with this opinion.

REVERSED and REMANDED.