

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>YING LIU and ZHIWEN YANG,<br>      Debtors. | BAP No. WW-23-1158-LBS<br><br>Bk. No. 2:22-bk-10855-TWD |
| YING LIU; ZHIWEN YANG,<br>      Appellants,<br>v.<br>YUN ZHANG,<br>      Appellee. | **MEMORANDUM**\* |

Appeal from the United States Bankruptcy Court
for the Western District of Washington
Timothy W. Dore, Bankruptcy Judge, Presiding

Before: LAFFERTY, BRAND, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Ying Liu and Zhiwen Yang ("Debtors") appeal the bankruptcy court's order denying their motion for relief under Civil Rule 60(b)[1] from an order approving a settlement agreement. Prepetition, one of Debtors'

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, "Civil Rule" references are to the Federal Rules of Civil Procedure, and "FRE" references are to the Federal Rules of Evidence.

1

creditors obtained a judgment against Debtors in China, followed by a judgment from a Washington state court recognizing the Chinese judgment. Upon Debtors' filing of a bankruptcy case, the creditor asserted a substantial claim against Debtors' estate based on that litigation.

Debtors repeatedly asserted, before and after their bankruptcy filing, that this creditor fraudulently obtained the Chinese judgment. Nevertheless, after months of settlement negotiations between Debtors and the creditor, Debtors voluntarily entered into a settlement agreement with the creditor, through which Debtors settled not just the validity and amount of the creditor's claim, receiving a $2 million reduction of that claim, but also the creditor's threatened objections to Debtors' subchapter V election, Debtors' discharge, and confirmation of Debtors' plan.

Debtors then filed a motion for approval of that settlement agreement, arguing that the settlement was "fair and equitable" and would benefit creditors of the estate, mainly because the estate would otherwise expend considerable resources litigating the multiple disputes between the parties in multiple courts. The bankruptcy court approved the settlement agreement. Debtors proposed a chapter 11 plan of reorganization incorporating the terms of the agreement, and the bankruptcy court confirmed that plan.

Several months after plan confirmation, the Chinese court vacated the Chinese judgment. Debtors, contending that this absolved them of all obligations to the creditor under the settlement agreement, moved to

vacate the bankruptcy court's order approving the agreement. The crux of Debtors' argument was, once again, that the creditor had fraudulently obtained the Chinese judgment, i.e., the same argument Debtors repeatedly asserted for years preceding their settlement. Debtors asserted that, in light of the vacation of the Chinese judgment, they were now entitled to relief from the settlement order under Civil Rule 60(b)(3), (b)(5), and (b)(6). The bankruptcy court denied the motion, holding that Debtors knew all pertinent facts before entering into the settlement agreement and that it would not be inequitable to hold Debtors to the bargain they voluntarily made for the benefit of the estate.

We AFFIRM.

## FACTS[2]

### A.    Prepetition Events

In 2017, Yun Zhang obtained a money judgment against Debtors in China (the "Chinese Judgment") based on a breach of Debtors' commercial obligations to her. Subsequently, Ms. Zhang filed a petition in the Superior Court for King County in Washington for recognition of the Chinese

---

[2] In their reply brief, Debtors request that the Panel strike certain documents from Ms. Zhang's Supplemental Excerpts of Record, on the basis that the documents were not properly designated under Rule 8009. Reply Brief, pp. 1-2. Although the Panel may take judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system, *see O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989), in this case, the Panel did not rely on any of the documents to which Debtors object. As such, the Panel overrules Debtors' objection as moot.

Judgment. In response to this petition, Debtors asserted that Ms. Zhang had fraudulently obtained the Chinese Judgment. Notwithstanding Debtors' objection, the Superior Court entered a judgment against Debtors in the amount of $4,698,122 (the "Washington Judgment").

Debtor Ying Liu later filed an action in China to set aside the Chinese Judgment, again asserting that Ms. Zhang committed fraud in obtaining the Chinese Judgment. Debtors also advised Hao Lu, an individual residing in China to whom Debtors owed money, that Ms. Zhang had fraudulently obtained the Chinese Judgment which threatened Hao Lu's recovery against Ms. Liu. As a result, Hao Lu filed a separate lawsuit to revoke the Chinese Judgment (the "Hao Lu Action").

**B.     Debtors' Bankruptcy Filing and the Parties' Settlement**

Shortly after Hao Lu initiated the Hao Lu Action, Debtors filed their chapter 11 case. In their schedules, Debtors identified the secured and unsecured claims held by Ms. Zhang, indicating that both claims were disputed. Ms. Zhang also filed a proof of claim, asserting a secured claim against the estate in the amount of $5,020,131.68.

At virtually every stage of Debtors' bankruptcy case, Debtors argued that Ms. Zhang did not have a valid claim and that Ms. Zhang obtained the Chinese Judgment by inappropriate means. And, as evidenced by an email from Debtors' lawyer, Debtors knew about the Hao Lu Action, which sought to vacate the Chinese Judgment on the basis of fraud.

4

Nevertheless, from July through August 2022, Debtors and Ms. Zhang engaged in settlement negotiations. Both parties were represented by counsel. As part of the settlement negotiations, Debtors requested inclusion of a clause in the final agreement that would nullify the settlement agreement if the Chinese Judgment was vacated (the "Nullification Clause"). Ms. Zhang did not accept Debtors' proposed Nullification Clause. Nevertheless, the parties reached a consensus and finalized a settlement agreement (the "Settlement Agreement").

In August 2022, Debtors filed a motion for approval of the Settlement Agreement in accordance with Rule 9019 (the "Settlement Motion"). The Settlement Agreement submitted to the bankruptcy court did not include the Nullification Clause. But it did include a requirement that the plan contain provisions consistent with the Settlement Agreement and that the plan be confirmed.

In the Settlement Motion, Debtors argued that their agreement with Ms. Zhang was fair and equitable, and that it satisfied the four-part test for compromises of controversies. Specifically, Debtors asserted that the benefits the estate would receive from the Settlement Agreement "outweigh[ed] the likely rewards of litigation because of the economic benefits of reducing [Ms.] Zhang's claim while forgoing lengthy and extremely costly litigation." Debtors stressed:

> Consider first the complexity, cost and delay of litigation. Yun Zhang has agreed to forgo objections to the Debtors' subchapter

V election, the discharge of debt, and plan confirmation, meaning the estate will likely not be burdened with the time and expense of defending against such objections, regardless of whether any has merit.

The administrative costs that would otherwise be expended on such litigation can instead be used to pay holders of allowed claims. Further, the delay and expense of litigation must include the real possibility of a lengthy appeals process. Accordingly, the Debtors believe the Agreement is fair in relation to the costs and benefits of pursuing litigation.

Debtors also argued that the Settlement Agreement was in the interest of all creditors of the estate. Debtors noted that, although Ms. Zhang's "claim may be reduced further through successful litigation," the Settlement Agreement was based on "a sound economic decision[] to preserve current and future estate funds in order to make meaningful distributions to unsecured creditors."

The bankruptcy court approved the settlement agreement (the "Settlement Order"). In the Settlement Order, the bankruptcy court found that the terms of the Settlement Agreement were "fair and equitable, in the interest of all parties, and satisf[ied] the standard for compromises and settlements pursuant to [Rule] 9019…."

Subsequently, Debtors filed a chapter 11 plan of reorganization (the "Plan"). In the Plan, Debtors proposed treatment of Ms. Zhang's claim in accordance with the Settlement Agreement. The bankruptcy court entered an order confirming the Plan.

## C. The Vacation of the Chinese Judgment and Debtors' Motion for Relief from the Settlement Order

Approximately nine months after entry of the Settlement Order and eight months after confirmation of the Plan, the Chinese court presiding over the Hao Lu Action vacated the Chinese Judgment. Debtors then filed a motion for relief from the Settlement Order under Civil Rule 60(b)(3), (b)(5), and (b)(6) (the "Motion for Relief"). In the Motion for Relief, Debtors argued that: (i) Ms. Zhang fraudulently obtained the Chinese Judgment by serving Debtors at the wrong address and making misrepresentations before the Chinese court; (ii) continued enforcement of the Settlement Order was no longer equitable; (iii) the Chinese Judgment was the sole basis for the Settlement Order, and vacation of the Chinese Judgment should similarly result in vacation of the Settlement Order; and (iv) extraordinary circumstances warranted relief from the Settlement Order.

At the hearing on the Motion for Relief, the bankruptcy court ruled that relief under Civil Rule 60(b)(3) was not warranted. The bankruptcy court found that any "fraud, misrepresentation, or opposing party misconduct" would relate to entry of the Chinese Judgment and **not** the Settlement Order, and that Debtors were aware of the alleged bad acts before voluntarily entering into the Settlement Agreement.

As to Civil Rule 60(b)(5), the bankruptcy court held that it was "not inequitable to hold the debtors to the terms of a settlement agreement they entered into while knowing all the relevant facts that have allowed them to

7

successfully challenge [Ms.] Zhang's claim." The court also stated that the existence of the Chinese Judgment was just one factor in Debtors' decision to settle.

With respect to Civil Rule 60(b)(6), the bankruptcy court held that there was no manifest injustice because Debtors knew all the relevant facts before settling. Finally, the court noted that the terms of the Settlement Agreement were incorporated into the Plan. Therefore, vacating the Settlement Order would not accomplish much because the parties were still bound by the confirmed Plan. As a result, the bankruptcy court entered an order denying the Motion for Relief. Debtors timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court err in holding that Civil Rule 60(b) is generally not available to avoid binding settlement agreements?

2. Did the bankruptcy court err in relying on certain settlement communications for its ruling?

3. Did the bankruptcy court err in denying Debtors' motion for relief from the Settlement Order under Civil Rule 60(b)(3)?

4. Did the bankruptcy court err in denying Debtors' motion for relief from the Settlement Order under Civil Rule 60(b)(5)?

5. Did the bankruptcy court err in denying Debtors' motion for relief from the Settlement Order under Civil Rule 60(b)(6)?

6. Did the bankruptcy court err by commenting on the futility of vacating the Settlement Order in light of the confirmed Plan?

## STANDARD OF REVIEW

The Panel reviews a trial court's decision to deny a Civil Rule 60(b) motion for abuse of discretion. *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1167 n.7 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc*, (April 24, 2002). In applying an abuse of discretion test, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc). If the bankruptcy court identified the correct legal rule, we then determine whether its "application of the correct legal standard [to the facts] was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks omitted).

## DISCUSSION

At the core of Debtors' appeal is their argument that vacation of the Chinese Judgment should translate into vacation of the Settlement Order. However, Debtors have not established that Civil Rule 60(b) provides an avenue for such relief. Consequently, the bankruptcy court did not abuse its discretion in denying Debtors' request to vacate the Settlement Order under Civil Rule 60(b)(3), (b)(5), and (b)(6), as discussed in Sections C., D.,

9

and E., respectively. Nor did the bankruptcy court err in noting that Civil Rule 60(b) generally does not allow for voiding of settlement agreements, as discussed in Section A., relying on certain settlement communications, as discussed in Section B., or noting that Debtors' confirmed Plan presented an additional obstacle to the relief sought by Debtors, as discussed in Section F.

**A. The bankruptcy court did not err in noting that Civil Rule 60(b) is generally not available to avoid binding settlement agreements.**

Debtors contend that the bankruptcy court erred by holding that the Settlement Agreement remains binding despite vacation of the Chinese Judgment, and by referencing *Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litigation)*, 516 F.3d 1095 (9th Cir. 2008), in support of its holding. However, Debtors mischaracterize the bankruptcy court's ruling. The bankruptcy court did not hold that the Settlement Agreement remains binding under every theory available to Debtors. Rather, the bankruptcy court simply commented that **Civil Rule 60(b)** is usually not the right tool to attack settlement agreements.

Specifically, the bankruptcy court relied on *Syncor* to note that "[g]enerally, [Civil] Rule 60(b) is not available to avoid a binding settlement agreement." Thus, the bankruptcy court employed *Syncor* to articulate a general rule for application of Civil Rule 60(b) to settlement agreements. Nevertheless, Debtors argue that the bankruptcy court's reliance was a mistake because *Syncor* involved a different context, i.e., a

10

class action lawsuit. This argument is unpersuasive: *Syncor* did not limit application of the rule quoted by the bankruptcy court to a specific context, and a review of the case makes clear that the rule would apply in other cases.

In *Syncor*, prior to the court's ruling on a motion for summary judgment filed by defendants, the parties entered into a class action settlement agreement that required court approval under the Civil Rules. *Id.* at 1097-99. The parties notified the district court of their settlement, but the district court entered an order granting the motion for summary judgment anyway. *Id*. Subsequently, the class filed a motion under Civil Rule 60(b) requesting that the court set aside the judgment. *Id*. The district court denied this motion. *Id*.

On appeal, the Ninth Circuit Court of Appeals reversed the district court's decision. *Id.* at 1103. The Court of Appeals first noted that "the requirement that the district court approve a class action settlement does not affect the binding nature of the parties' agreement." *Id.* at 1100. The Court of Appeals reasoned:

> At the time of the settlement, Defendants knew they had dispositive motions pending and chose the certainty of settlement rather than the gamble of a ruling on their motions. Thus, Defendants chose to forego the chance that the district court would grant summary judgment in their favor. Because the parties bound themselves to a settlement agreement subject only to court approval (which they had agreed to seek) and gave the required notice of the agreement, the district court

11

should not have (1) filed its order granting the motions for summary judgment and (2) entered final judgments against the Class.

*Id.*; *see also Sheng v. Starkey Lab'ys, Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997) ("[Civil] Rule 60(b) does not allow district courts to indulge a party's discontent over the effects of the party's bargain.") (citation and international quotation marks omitted).

Debtors' attempt to distinguish *Syncor* by arguing that *Syncor* involved a complex class action lawsuit presents a distinction without a difference. *Syncor* acknowledged and adopted the holding of *Sheng*, which set forth the general principal that district courts lack the discretion to allow parties to nullify a fully executed settlement agreement by employing Civil Rule 60(b). This statement of general application is not dependent on the size or type of litigation. Debtors have not articulated why the Court of Appeals' reasoning does not equally apply to the Settlement Agreement.

Debtors place great weight on the Court of Appeals' statement that the strong judicial policy favoring settlement is particularly important "where complex class action litigation is concerned." *Syncor*, 516 F.3d at 1101. However, as discussed above, the complexity of the case in *Syncor* does not make this policy inapplicable to less complex cases.

Moreover, in support of *Syncor*'s policy conclusion, the Court of Appeals referenced local rules that set forth policies and procedures for

12

settlement to encourage disposition of civil litigation by settlement. *Id*. The local rules cited by the Court of Appeals make clear that, notwithstanding the complexity of a matter, the policy regarding settlement is important in any case. *Id*.

The very same policies are reflected in the Local Bankruptcy Rules for the Western District of Washington (the "Local Bankruptcy Rules"), through which the bankruptcy courts in that district offer a specialized mediation program to streamline settlement of disputes arising from bankruptcy cases. Local Bankruptcy Rules 9040-1 – 9054-1. As stated in the Local Bankruptcy Rules:

> The court recognizes that formal litigation of disputes in bankruptcy cases and adversary proceedings frequently imposes significant economic burdens on parties and often delays resolution of those disputes. The procedures established by these Local Bankruptcy Rules are intended primarily to provide litigants with the means to resolve their disputes more quickly, at less cost, and often without the stress and pressure of litigation.
>
> The court also notes that the volume of cases, contested matters and adversary proceedings filed in the Western District of Washington has placed substantial burdens upon counsel, litigants and the court, all of which contribute to the delay in the resolution of disputed matters. A court authorized mediation program, in which litigants and counsel meet with a Mediator, offers an opportunity to parties to settle legal disputes promptly and less expensively, to their mutual satisfaction. Local Bankruptcy Rule 9040-2.

Thus, the "strong judicial policy favoring settlement" is equally present in bankruptcy cases and proceedings.

The bankruptcy court did not err in relying on *Syncor* or noting that Civil Rule 60(b) generally does not provide an avenue for avoidance of settlement agreements.

**B.** **The bankruptcy court did not err in relying on communications regarding settlement negotiations.**

Debtors assert that the bankruptcy court's ruling impermissibly relied on settlement communications in violation of FRE 408.[3] FRE 408 provides that certain settlement communications are not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." FRE 408(a). Nevertheless, "[t]he court may admit this evidence for another purpose…." FRE 408(b).

Here, the bankruptcy court did not admit the settlement communications for the purpose of proving or disproving the validity or amount of a claim, or to impeach prior inconsistent statements. Rather, the bankruptcy court used the settlement communications merely to establish that Debtors were aware of the possibility that the Chinese Judgment might be vacated, and attempted to include a clause that would nullify the Settlement Agreement if such a contingency occurred. These were not

---

[3] Debtors raise this objection despite furnishing all of the subject communications as part of their excerpts of record.

prohibited uses of the communications for purposes of FRE 408(a).[4] As such, the bankruptcy court did not err in referencing these communications in its ruling.

## C.     The bankruptcy court did not abuse its discretion in denying Debtors' request for relief under Civil Rule 60(b)(3).

Pursuant to Civil Rule 60(b)(3), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" based on "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." "To prevail, the moving party must prove by clear and convincing evidence that the [order] was obtained

---

[4] Notwithstanding their objection to the use of these settlement communications, Debtors rely on one such communication to argue that both parties believed that the Settlement Agreement would be nullified upon vacation of the Chinese Judgment. Specifically, Debtors reference an email by Ms. Zhang's counsel, in which counsel stated that inclusion of such a nullification clause would be "redundant."

The parties dispute the meaning of the word "redundant" as used in this communication. However, this issue was irrelevant to the bankruptcy court's ruling and is similarly irrelevant for purposes of this appeal. The issue of interpreting a settlement agreement is different from the issue of whether to vacate an order approving the settlement agreement. *See Satellite Cap., LLC v. Emaciation Cap., LLC (In re Sawtelle Partners, LLC)*, No. 2:16-BK-21234-BR, 2019 WL 2855786, at *6 (9th Cir. BAP Jul. 1, 2019).

The bankruptcy court was not presented with an issue of contract interpretation in response to a Civil Rule 60(b) motion. *See id*. The bankruptcy court merely assessed whether Debtors had stated grounds for relief under Civil Rule 60(b). For that narrow purpose, the bankruptcy court only used the subject email communications to note that Debtors were aware of the possibility that the Chinese Judgment might be vacated, as evidenced by their attempt to include an **explicit** nullification clause in the Settlement Agreement, and that, eventually, they were unsuccessful in including any such **explicit** clause. Debtors' additional argument that the Settlement Agreement actually included an **implicit** nullification clause is beyond the scope of this appeal, and would require initiation of a different action for contract interpretation.

15

through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000).

Debtors first contend that the bankruptcy court abused its discretion by relying on *Pacific & Arctic Railway and Navigation Co. v. United Transportation Union*, 952 F.2d 1144 (9th Cir. 1991), for the proposition that bad conduct warranting relief under Civil Rule 60(b)(3) must have been unknown and not discoverable prior to entry of the order from which relief is sought. In *Pacific*, the Ninth Circuit reviewed whether an arbitrator had committed fraud prior to entering an award against a railroad company. *Id.* at 1146-47. The Court of Appeals held that both the Federal Arbitration Act and Civil Rule 60(b)(3) "require that fraud be proven by clear and convincing evidence, not be discoverable by due diligence before or during the proceeding, and be materially related to the submitted issue." *Id.* at 1148.

The bankruptcy court's reliance on *Pacific* was limited to a reference to this quote. The court did not otherwise analogize the facts of *Pacific* to the current dispute between Debtors and Ms. Zhang, or otherwise "rely" on that decision. Nevertheless, Debtors assert that this holding in *Pacific* applies only to arbitration awards under the Railway Labor Act, and that the statement was dicta.

16

*Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004), refutes Debtors' contention. *Casey* did not involve the Railway Labor Act or the Federal Arbitration Act. Rather, the plaintiff in *Casey* sought vacation of a judgment entered in favor of defendant in a civil lawsuit involving discrimination and sexual harassment claims. *Casey*, 362 F.3d at 1256. Despite the completely different causes of action, the Court of Appeals quoted the same language from *Pacific*, stating that, for purposes of Civil Rule 60(b)(3), the fraud must "not be discoverable by due diligence before or during the proceedings." *Id.* at 1260 (quoting *Pacific*, 952 F.2d at 1148).

Because the Court of Appeals in *Casey* was assessing whether the plaintiff had a valid request for relief under Civil Rule 60(b)(3), Debtors cannot contend that the quoted law was dicta. Nor can Debtors seriously contend that the principle articulated in *Casey* is limited to any particular area of law. *See also Del Toro v. 360 P'Ship LP*, No. 22-55078, 2022 WL 17223042, at *1 (9th Cir. Nov. 25, 2022) (quoting same language in an action arising out of a foreclosure); *Smith v. Waggener*, No. 20-15891, 2022 WL 213376 (9th Cir. Jan. 24, 2022) (quoting same language in action alleging constitutional violations under 42 U.S.C. § 1983); *Coulon v. Fairbank*, 812 Fed. App'x. 699, 700 (quoting same language in an action under the Americans with Disabilities Act and the Fair Housing Act). Accordingly, there is no reason why the bankruptcy court should not have applied this principle to this case.

17

Debtors also have not identified any findings of fact by the bankruptcy court that were illogical, implausible or without support in the record. The bankruptcy court's finding that Debtors were aware of all the alleged acts of fraud prior to entry of the Settlement Order is amply supported by the record. Debtors themselves have repeatedly detailed their efforts to vacate both the Washington Judgment and the Chinese Judgment on much the same allegations of fraud, long before Debtors negotiated the terms of the Settlement Agreement. Thus, the bankruptcy court did not abuse its discretion in finding that Debtors were aware of all the pertinent facts of fraud or misconduct prior to entry of the Settlement Order.

The bankruptcy court also correctly identified a causation issue in Debtors' argument under Civil Rule 60(b)(3). Specifically, the bankruptcy court noted that Debtors' arguments regarding fraud focused on fraud in the procurement of the Chinese Judgment, **not** fraud in the entry of the Settlement Order.

The record supports this conclusion. In their Motion for Relief before the bankruptcy court, Debtors mainly asserted that Ms. Zhang fraudulently obtained the **Chinese Judgment**, as they repeatedly had alleged before and after the filing of their bankruptcy case. Other than a conclusory statement that Ms. Zhang "induce[d] the Debtors into a settlement agreement" despite "know[ing] that the Debtors did not actually owe [Ms.] Zhang anything," Debtors did not provide any facts that would lead the bankruptcy court to believe that Ms. Zhang had procured the **Settlement**

**Order** by fraud, misrepresentation, or misconduct. And, even if Ms. Zhang knew that Debtors did not owe her anything, by the time the parties entered into the Settlement Agreement, Debtors **also** knew as much; again, Debtors had repeatedly taken this stance prior to engaging in settlement discussions with Ms. Zhang.

On appeal, Debtors now assert that "[d]uring negotiations of the settlement, [Ms.] Zhang made false representations of material fact, intended to induce [Debtors] to agree to an allowed claim, the representations were made with knowledge of their falsity, and [Debtors] justifiably relied upon those false representations to their detriment." Appellants' Opening Brief, p. 18. But Debtors do not reference any facts in the record supporting this blanket recounting of the elements of fraud. Consequently, the bankruptcy court did not abuse its discretion in finding that Debtors failed to provide "clear and convincing" evidence of fraud or misconduct related to the **Settlement Order**.

**D.     The bankruptcy court did not abuse its discretion in denying Debtors' request for relief under Civil Rule 60(b)(5).**

Civil Rule 60(b)(5) permits a court to relieve a party from a final judgment if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Civil Rule 60(b)(5). Debtors mainly argue that prospective application of the Settlement Order

19

is no longer equitable, but also contend that the Settlement Order was based on a now vacated judgment, i.e., the Chinese Judgment.

### 1. The bankruptcy court did not err in holding that prospective application of the Settlement Order would not be inequitable.

Prospective application of an order is no longer equitable if "a significant change either in factual conditions or in law" renders continued enforcement "detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (citing *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)). "Relief from a court order should not be granted, however, simply because a party finds 'it is no longer convenient to live with the terms' of the order." *SEC v. Coldicutt*, 258 F.3d 939, 942 (9th Cir. 2001) (quoting *Rufo*, 502 U.S. at 383).

In addition, "[t]he equitable considerations applicable to [Civil] Rule 60(b)(5) cannot merely involve private interests." *In re Brown*, 547 B.R. 846, 855 (Bankr. S.D. Cal. 2016). The public interest in finality of judgments and upholding settlement agreements outweighs "considerable injury" a party to private litigation may suffer based on changed circumstances. *Id*.

Here, the bankruptcy court did not abuse its discretion in holding that it would not be inequitable, for purposes of Civil Rule 60(b)(5), to uphold the Settlement Order. As discussed by the bankruptcy court, Debtors knew all the pertinent facts before voluntarily entering into the Settlement Agreement. Although the Chinese Judgment was vacated after

entry of the Settlement Order, the parties were well aware of the possibility that it could be vacated when they entered into the Settlement Agreement.[5]

In addition, as noted by the bankruptcy court, the Settlement Agreement was not based solely on the Chinese Judgment. Debtors themselves argued that the Settlement Agreement was beneficial because of the "complexity, cost and delay of litigation" which likely would involve a "lengthy appeals process." This prospect of litigation would not disappear simply because the Chinese Judgment was vacated; among other things, Debtors would still have to: (i) wait for resolution of an appeal of the Chinese court's decision to vacate the Chinese Judgment; (ii) move to vacate the Washington Judgment; and (iii) object to Ms. Zhang's claim against the estate. Moreover, the record does not reflect that Debtors did not owe Ms. Zhang **any** amount of money; rather, the record demonstrates only that Ms. Zhang no longer held one of the judgments on the debt.

The estate also received benefits beyond the reduction of the amount of Ms. Zhang's claim. As noted by Debtors in their Settlement Motion, Ms.

---

[5] Debtors also generally argue throughout their appellate brief that they had no choice but to settle. According to Debtors, it would have been very unlikely that any court would sustain an objection to Ms. Zhang's claim because of the existence of the Chinese Judgment. First, as noted by the bankruptcy court, Debtors must have contemplated the possibility that the Chinese Judgment would be vacated because they attempted to include the Nullification Clause in the Settlement Agreement. As such, Debtors could have made a number of other choices, such as objecting to Ms. Zhang's claim or proposing alternative treatments to Ms. Zhang's claim in the Plan. Second, even if the Panel were to take Debtors' comments as true, whether or not Debtors felt they had alternatives is not a relevant consideration for any of the subsections of Civil Rule 60(b).

Zhang agreed to forego her objections to: (i) Debtors' subchapter V election; (ii) Debtors' discharge; and (iii) confirmation of the Plan. As such, Debtors themselves acknowledged that the bargain they received from the Settlement Agreement included saving resources from litigating not just the validity or amount of Ms. Zhang's claim, but several other contested matters on the horizon. All of these facts supported entry of the Settlement Order under the Ninth Circuit's "fair and equitable" standard in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986). As such, the vacation of the Chinese Judgment did not qualify as a "**significant** change in factual conditions." *See Horne*, 557 U.S. at 447 (emphasis added).

In addition, even if the vacation of the Chinese Judgment qualified as a **significant** change in factual conditions, the equitable considerations set forth by Debtors "merely involve private interests."[6] *Brown*, 547 B.R. at 855. And, to the extent the public interest is implicated, it would support the bankruptcy court's conclusion:

> There is a deeply embedded judicial and legislative policy in favor of keeping final judgments final. That is especially true for settlement agreements. A settlor's remorse cannot alone justify abandoning such judgments. Else, the key virtue of settling cases—letting the parties move on after they each get some of what they want—would be lost.

---

[6] The order vacating the Chinese Judgment also suggests that debtor Liu Ying may have colluded with Ms. Zhang in executing certain false IOUs. To the extent private equitable concerns are implicated, such concerns would militate against allowing Debtors to benefit from their own misconduct.

*Cummings v. Greater Cleveland Reg'l Transit Auth.*, 865 F.3d 844, 846 (6th Cir. 2017) (citing, *inter alia*, *Ackermann v. United States*, 340 U.S. 193, 198 (1950)). This interest in finality is especially prevalent in chapter 11 cases, where plans of reorganization often rely on final orders approving settlement agreements between the estate and creditors. In such cases, it is not only the parties to the settlement agreements that have an interest in finality, but all creditors of the estate.

Consequently, the bankruptcy court did not abuse its discretion in denying Debtors' request for relief under this prong of Civil Rule 60(b)(5).[7]

## 2. The bankruptcy court did not err in holding that the Settlement Order was not based exclusively on the Chinese Judgment.

Although Debtors focus on their argument that enforcement of the Settlement Order is no longer equitable, Debtors also argue that the Settlement Order may be vacated because it is based on a prior judgment that has been reversed or vacated. However, "application of this clause has been limited to cases in which the present judgment is based on the prior judgment in the sense of *res judicata* or collateral estoppel." *Schwartz v.*

---

[7] In their brief on appeal, Debtors mention, in passing, that the doctrines of *in pari delicto* and unclean hands support Debtors' request for relief. Debtors did not present these arguments to the bankruptcy court and, as a result, may not present them belatedly on appeal. *See Fegert*, 887 F.2d at 957 ("The rule in this circuit is that appellate courts will not consider arguments that are not properly raised in the trial courts.") (internal quotation marks omitted).

*United States*, 976 F.2d 213, 217 (4th Cir. 1992) (internal quotation marks omitted).

Here, the Settlement Order was not based on the Chinese Judgment under theories of *res judicata* or collateral estoppel – indeed, the Chinese Judgment was being challenged through a number of mechanisms at the same time Debtors were settling with Ms. Zhang. Rather, as noted by the bankruptcy court, the existence of the Chinese Judgment was just one factor Debtors considered when voluntarily entering into the Settlement Agreement.[8] As such, the bankruptcy court also did not abuse its discretion in denying relief under this prong of Civil Rule 60(b)(5).

E.     **The bankruptcy court did not abuse its discretion in denying Debtors' request for relief under Civil Rule 60(b)(6).**

Under Civil Rule 60(b)(6), a court may relieve a party from a final order for "any other reason that justifies relief." A party seeking relief under Civil Rule 60(b)(6) must show extraordinary circumstances that demonstrate it is faultless in the delay. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993).

As to Civil Rule 60(b)(6), Debtors first contend that the bankruptcy court committed "clear error" by relying on *Harvest v. Castro*, 531 F.3d 737 (9th Cir. 2008). Debtors assert that *Harvest* involved a writ of habeas corpus, and that the facts in that case are distinguishable from the facts of this case.

---

[8] The record before the Panel also is devoid of the status of the Washington Judgment. As such, despite the vacation of the Chinese Judgment, it appears that Ms. Zhang still holds a judgment against Debtors.

24

However, the bankruptcy court relied on *Harvest* for the unremarkable proposition that Civil Rule 60(b)(6) is "to be used sparingly" and "to prevent manifest injustice" in "extraordinary circumstances." *Harvest*, 531 F.3d at 749. This language in *Harvest* referenced another Ninth Circuit Court of Appeals decision. *See Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1103 (9th Cir. 2006). *Latshaw*, in turn, involved a motion for relief from a judgment based on a settlement under, among other subsections, Civil Rule 60(b)(6). *Id.* at 1102-04. As such, Debtors position is without merit.

Debtors also contend that the bankruptcy court abused its discretion by finding a lack of "extraordinary circumstances" warranting relief under Civil Rule 60(b)(6). However, the bankruptcy court's conclusion was not illogical, implausible, or without support from the record.

*Schwartz*, referenced above, is squarely on point. In *Schwartz*, the appellant settled a civil forfeiture action, but moved for relief from the settlement after the underlying convictions that led to the forfeiture action were vacated. *Schwartz*, 976 F.2d at 214. Relying on a Supreme Court decision, the Fourth Circuit Court of Appeals stated that "strategic decisions made during the course of litigation provide no basis for relief under [Civil Rule] 60(b)(6), even though with hindsight they appear wrong." *Id.* at 218 (citing *Ackermann*, 340 U.S. 193). Although *Ackermann* involved relief from a decision not to appeal, the *Schwartz* court explained:

We find no meaningful distinction between a motion asking for relief from a decision not to appeal, as in *Ackermann,* and one that asks for relief from a decision to settle, as in this case. The decision to settle a case is made in the same manner as any other decision with respect to the course of litigation, including a decision not to appeal. A litigant weighs the chance of success against the probable cost of achieving that success through further litigation, all based on whatever limited information is available at the time. [The appellant] necessarily undertook such a cost-benefit weighing in 1984 when he decided to settle his challenge to the forfeiture. His was as calculated, free, and deliberate a choice as that of [the appellants in *Ackermann*], and as their's was not, he should not be relieved from it.

*Id.* at 218-19; *see also Brandon v. Bodeker (In re Bodeker)*, 525 B.R. 770, 774 (D. Mont. 2015), *aff'd*, 689 F. App'x 879 (9th Cir. 2017) (collecting cases and holding that a "party's failure to properly estimate the loss or gain from entering a settlement agreement is not an extraordinary circumstance" and that Civil Rule 60(b)(6) "was not intended to relieve a party from a settlement agreement entered voluntarily with the advice of counsel").

As in *Schwartz* and *Ackermann*, Debtors made a strategic decision to settle with Ms. Zhang. Such a decision does not come within the purview of Civil Rule 60(b)(6).[9]

---

[9] Debtors also argue that the circumstances here are "extraordinary" because they are attempting to protect other creditors of the estate. However, as far as the Panel can tell from the record, Debtors appropriately served parties in interest with the Settlement Motion and no such parties in interest objected to the terms of the Settlement Agreement. As such, creditors consented to entry of the Settlement Order, and Debtors' contention that other parties will now be prejudiced is unpersuasive.

Finally, clause (6) and clauses (1) through (5) of Civil Rule 60 are mutually exclusive. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988). Thus, Civil Rule 60(b)(6) applies "only when the reason for granting relief is not covered by any of the other reasons set forth in [Civil] Rule 60." *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007). Here, the main crux of Debtors' argument is that Ms. Zhang fraudulently obtained the Settlement Order, which is directly covered by Civil Rule 60(b)(3). As such, the "catch-all" provision of Civil Rule 60(b)(6) is inapplicable to this case.

### F. The bankruptcy court did not err by commenting on the futility of vacating the Settlement Order.

Debtors assert that the bankruptcy court erred by noting that vacating the Settlement Order would "accomplish little, as [Debtors] and other parties would remain bound by the terms of the confirmed plan." In their brief on appeal, Debtors acknowledge that any ruling on the Motion for Relief, alone, would not accomplish Debtors' goal, i.e., disallowance of Ms. Zhang's claim against the estate. Appellants' Brief, p. 23. Nevertheless, Debtors assert that the bankruptcy court should not have held that "the plan must be modified to accomplish those ends." *Id*.

Debtors misconstrue the bankruptcy court's statement. The bankruptcy court simply noted that the Plan incorporated the terms of the Settlement Agreement and observed that vacating the Settlement Order would not be the last step in Debtors' plan to disallow Ms. Zhang's claim

27

against the estate. The bankruptcy court did not state that the Plan must be modified and did not make any findings regarding whether Debtors could or could not object to Ms. Zhang's claim pursuant to the terms of the Plan. That issue was not before the bankruptcy court. As such, the parties' arguments regarding the terms of the Plan are not properly before the Panel, and Debtors have not otherwise identified an error in the bankruptcy court's comment regarding the Plan.

## CONCLUSION

The bankruptcy court did not err in denying Debtors' request for relief from the Settlement Order under Civil Rule 60(b)(3), (b)(5), and (b)(6). We therefore AFFIRM.